SOLON HUMPHREYS

*v.*

JOSEPH MORTON *et al.*

*Filed at Ottawa May 14, 1881 —Supplemental opinion November 10, 1881.*

1.  MORTGAGE—*priority of debts first maturing.*   Where several notes, payable at different dates, are secured by a mortgage, the notes, in the absence of any special provision in the mortgage to the contrary, are entitled to payment from the proceeds of the mortgaged property in the order of their maturity.

2.  But when a deed of trust is given to secure bonds all maturing at the same time, with semi-annual interest coupons thereto attached, and authorizes no sale for the interest alone, but provides that for a default in the payment of interest for the space of six months all the bonds shall become due, and thereupon the trustees shall take possession and sell, and from the proceeds, etc., pay all such bonds, or so many as may be outstanding, showing an intention that no sale shall be made except for the whole debt, this rule of priority does not apply, and the holders of bonds upon which the interest has not been paid will have no priority as to the payment of such interest over others upon whose bonds the interest has been paid.

3.  Where the holders of bonds secured by deed of trust upon a railroad and its property, in placing a portion of such bonds upon the market, and their agent in selling the same, have not made any representations, or by their conduct done anything which would be likely to deceive or defraud the persons purchasing bonds of them, they will not be postponed in the payment of the interest on their remaining bonds until the payment in full of the bonds sold by them; nor will they be so postponed from a neglect to inform such purchasers of the fact that the mortgagor had failed to keep the interest paid on their bonds.

4.  INTEREST—*when allowed on interest coupons.*   Interest is properly allowed upon an interest coupon attached to a bond, from and after its maturity, although no such interest is promised in the same.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. DAVID McCULLOCH, Judge, presiding.

On the 21st day of May, 1864, the Peoria, Pekin and Jacksonville Railroad Company executed and delivered a mortgage or deed of trust to Francis B. Cooley and James Bird, on the entire line of its road, as trustees, to secure the payment of certain first mortgage bonds which had been issued by the company. A large amount of these first mortgage bonds were subsequently sold and delivered by the company to Arnold, Allen, Trowbridge and Hopkins, who, on or about the 1st day of January, 1871, surrendered all the unpaid interest warrants attached to the bonds to the company for all interest due to that date, and received in exchange therefor second mortgage bonds. After this exchange, Arnold, Allen, Trowbridge and Hopkins offered for sale, through W. T. Hatch & Co., bankers in New York, a portion of these first mortgage bonds. Joseph L. Morton, of New York, on or about the 16th day of August, 1871, purchased $30,000 of the bonds, and John McCracken, who resided at the same place, purchased, through Hatch & Co., $10,000 of the bonds. The interest warrants attached to these bonds were regularly paid each year at the Importers' and Traders' National Bank, New York. On the 1st day of January, 1878, however, default in the payment of interest was made, and no interest has been paid on any of the bonds since that time.

On the 1st day of April, 1878, John Allen and John H. Allen filed their bill in the Peoria circuit court, alleging that they owned a large amount of the first and second mortgage bonds, in which the execution of the mortgages was set out, and their terms and conditions. The bill also alleged, that by the terms and conditions of the mortgages the default in payment of interest had caused the principal of all the bonds to become due and payable.

38—100 ILL.

On the 14th day of July, 1879, Solon Humphreys, Morris K. Jessup, John T. Terry and Cyrus W. Field, were, on their own motion, admitted as co-complainants in the bill. On the next day they filed a bill as co-complainants, in which they set up that they were owners and holders of a large amount of the first and second mortgage bonds.

On the 14th day of June, 1879, Francis B. Cooley and James Bird filed their cross-bill, in which it was set up that they were trustees under the first mortgage. They also set up that the default of the railroad company to pay interest according to the terms of the deed of trust, had rendered the whole of the bonds, both principal and interest, due. They therefore asked for a foreclosure of the first mortgage.

On the 7th day of August, 1879, a decree of foreclosure was rendered on the first mortgage, and a decree of sale entered for the amount found due. At the sale under the decree Humphreys became the purchaser, for himself and the others who purchased and owned the bonds with him. After the sale, Humphreys and others filed an intervening petition in the case to obtain payment of the interest warrants on their bonds, which were due and unpaid, from the 1st day of January, 1871, to January 1, 1878, before anything whatever should be paid on the other bonds and interest warrants. Morton and McCracken filed a cross-petition, in which they prayed that the payment of all interest warrants which matured on and before January 1, 1878, should be postponed until the bonds and interest warrants held by them should be paid. The court denied both petitions, and both parties appealed, entered into a stipulation in regard to the facts, and agreed to submit two questions for consideration.

In this case it is stipulated and agreed by and between all parties hereto that there were but two questions considered by the court, and to be reviewed by this court, viz:

*First*—That Morris K. Jessup, Cyrus W. Field, John T. Terry, Solon Humphreys and John Allen were and are the

owners of a large amount of the first mortgage bonds of the Peoria, Pekin and Jacksonville Railroad Company, upon which none of the coupons were paid for several years prior to the time of general default by said company in the payment of any interest on any of its bonds, on January 1, 1878; that Joseph L. Morton and John McCracken were also the owners of certain of said bonds, and that the coupons upon their bonds were paid, while they owned them, up to the time of general default, January 1, 1878, and that the coupons upon all bonds of said company, not represented by the parties first herein named, were paid by said company in full up to January 1, 1878; now the first named parties claim that all the coupons upon their bonds maturing prior to January 1, 1878, should be paid in full before there is a general *pro rata* distribution of the fund. This position is denied and opposed by Morton and McCracken, who claim that their coupons should be paid in full because of the fraud practiced upon them by the parties first named, and those from whom they purchased with notice, before any general distribution of the fund.

These were the only questions considered by the court, and brought here for review upon the facts embraced in the stipulation.

Mr. WAGER SWAYNE, and Messrs. CRATTY BROS. & ULRICH, for the appellant:

1. The court will not presume fraud, but will require it to be proven; and if the acts and things done, and which are not otherwise explained or accounted for, can consistently be understood or referred to an honest intent and innocent motive, the court will so understand and refer them. It may be true that appellant purchased *pendente lite*, but we can not see what right that gives these contestants to prefer such a claim as this.

2. Of as little application is the point, that in a foreclosure case all defences may be made against an innocent holder of paper secured by the mortgage. Such is the law of this State. But the cases cited refer to defences to be made by the mortgagor. The rule is adopted or established for his benefit, and has no reference to lateral equities which may arise between the parties to the record. *Bayard* v. *Mix,* 83 Ill. 13.

3. The managers of the railroad severally made large advances for the development of the property, and its protection, taking therefor second mortgage bonds, which have proved worthless. The earnings were put into the repairs and operating account, and they withheld such portions of their matured interest warrants from presentation, as the company had not funds to pay. The evidence shows that the value of the road was greatly enhanced thereby. It was not fraud or unfaithfulness to attempt to keep the road from going into immediate bankruptcy. *Ketchum* v. *Duncan,* 96 U. S. 659; *Wright* v. *Grover,* 27 Ill. 426.

4. Whether or not there was an implied understanding that they should first be repaid such advances made by them, there is a superior equity in our favor, and we are brought within the rule of *Walker* v. *Dement,* 42 Ill. 272.

5. The unpaid coupons are entitled to priority as being promissory notes, passing the legal title by delivery, and drawing interest after maturity. *N. Y. and O. M. R. R. Co.* 13 Blatch. 412; *Sargeant* v. *Howe,* 21 Ill. 148; *Vansant* v. *Allmon,* 23 id. 30; *Gardner* v. *Diederichs,* 41 id. 158; *Kester* v. *Burke,* 81 id. 436; *Hurk* v. *Erskine,* 45 Mo. 484; *Johnson* v. *County of Stark,* 24 Ill. 92; *Harper* v. *Ely,* 70 id. 582.

Messrs. WILLIAMS, BURR & CAPEN, and Mr. JULIEN T. DAVIES, for the appellees:

1. A purchaser *pendente lite* takes subject to all equities. *Alwood* v. *Mansfield,* 59 Ill. 96, 503; *Jackson* v. *Warren,* 32 id. 331; *Dickson* v. *Todd,* 43 id. 504.

2.  In this State there is no innocent purchaser of a debt secured by mortgage, when he goes into equity to enforce his mortgage security.  *Olds* v. *Cummings*, 31 Ill. 188.

3.  The owners of bonds and interest warrants, being directors of the corporation, by causing the advertisement that warrants would be paid at maturity, and not presenting their own, misled the outside owners, and enabled themselves to continue in control of the property and earnings, prevented a foreclosure, and are estopped from now claiming payment of these warrants until all bonds and other warrants are paid in full.  *Union Trust Co.* v. *Monticello and P. J. R. R. Co.* 63 N. Y. 311; *Haven* v. *G. J. R. R. and D. Co.* 109 Mass. 88; *Ketchum* v. *Duncan*, 96 U. S. 659.

4.  Equality is equity.  Therefore, in no event can the interest warrants be preferred, as all creditors share in common in the assets of a bankrupt debtor.  Unless by some stern rule of law, no one has a preference.  *Sewall* v. *Brainard*, 38 Vt. 364; Clemens on Corporations, sec. 145; Jones on Railroads, sec. 327; *Digbee* v. *Craig*, 2 Eden, 200; S. C. Ambler, 612; *Miller* v. *R. and W. Ry. Co.* 40 Vt. 399; *Haven* v. *G. J. Ry. Co.* 109 Mass. 97; *South Carolina* v. *S. and N. R. R. Co.* 8 S. C. 129; *Dunham* v. *Ry. Co.* 1 Wall. 254; *Ketchum* v. *Duncan*, 96 U. S. 70; *Duncan* v. *M. and O. R. R. Co.* 3 Woods, 567.

5.  Where a debt secured by mortgage is payable in installments, the right of priority of payment in accordance with priority of maturity "rests upon the fact that the holder of the note first maturing may foreclose upon non-payment, without waiting for the succeeding notes to mature."  *Gardner* v. *Diederichs*, 41 Ill. 158; *Sargent* v. *Howe*, 21 id. 148.

6.  If by the terms of the mortgage, on foreclosure, the proceeds of sale are to be applied on the whole debt, there can be no priority.  *Gardner* v. *Diederichs*, 41 Ill. 158; *Sargent* v. *Howe*, 21 id. 148.

7. The trust deed in this case provides that in case of sale the entire debt becomes due. Therefore, there can be no priority. Even if these interest warrants were entitled to priority, which we deny, interest on them could have no priority.

8. Interest is only payable after demand and refusal, of a note payable at a particular place. No payment of these warrants was demanded, therefore they can not bear interest. *Corcoran* v. *C. and O. Canal Co.* 1 McArthur, 358.

9. These warrants are not promises to pay, but are mere evidences of a debt for interest, and interest upon interest is not allowable by the laws of this State. *Leonard* v. *Admr. of Villars*, 23 Ill. 377; *Virginia* v. *C. and O. C. Co.* 35 Md. 1; *Thompson* v. *Hoagland,* 65 id. 310; *McFadden* v. *Fortier*, 20 Ill. 509.

10. There can be no priority for interest on interest. *Virginia* v. *C. and O. C. Co.* 35 Md. 1.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The claim for priority, interposed by Humphreys and others, is predicated upon the decisions of this court to the effect that where several notes, payable at different dates, are secured by a mortgage, the notes, in the absence of any special provision in the mortgage to the contrary, are entitled to payment from the proceeds of the mortgaged property, in the order of their maturity. This is the doctrine of *Sargent* v. *Howe*, 21 Ill. 148, *Vansant* v. *Allmon*, 23 id. 35, *Gardner* v. *Diederichs*, 41 id. 170, and subsequent cases. But does the case under consideration fall within the principle of these cases? Here, the bonds all bore date May 21, 1864, and were all payable on the 1st day of July, 1894, with interest from and after January 1, 1865, at the rate of seven per cent per annum, payable semi-annually. So far as the bonds are concerned and the interest thereon, they are all due and pay-

able at one and the same time. The deed of trust provides, that if there shall be a default in the payment of semi-annual interest on any or either of said bonds, for the space of six months after the same becomes due, then the whole principal sum mentioned in all the bonds, shall become due and payable, and the trustees named in the deed of trust shall take possession of the road, and sell the same at public auction. The deed then provides: "That out of the moneys or proceeds arising either from said tolls, earnings or receipts of said railroad and premises, or out or from said sale so to be made as aforesaid, after first deducting the expenses so incurred in the sale or the running the road, parties of the second part shall pay said twelve hundred bonds, or so many as shall be outstanding, together with all arrears of interest then due or owing upon the same, paying over the surplus money, if any, to party of the first part." It seems plain, from this provision, that it was intended by the parties to the deed of trust that no sale should be made except for the whole debt, and hence the provision that in default of payment of the semi-annual interest all of the bonds should become due. Indeed, the deed of trust does not authorize a sale of the railroad for the interest which fell due semi-annually; but if the interest was not paid, then the whole debt matured, and a sale was authorized to satisfy the whole debt, both principal and interest.

Again, the language of the deed of trust, in regard to payment, precludes the idea that there should be a priority. The language that the trustees "shall pay said twelve hundred bonds, or so many as shall be outstanding and unpaid, together with all arrears of interest then due and owing upon the same," clearly implies that if there is not money enough realized from the sale to pay all the bonds and interest, then the same shall be paid *pro rata*, regardless of the time when interest may have become due and payable on any of the bonds.

This case is entirely different from the cases where this court has held that the holder of one of a series of notes maturing at different times, and secured by one mortgage, is entitled to priority, and the decision in those cases can have no application here. The fact that Morton and McCracken obtained the interest on the bonds they held, while the holders of the other bonds did not, is entitled to no special consideration. If the holders of these bonds were not willing that the railroad company should pay Morton and McCracken the interest on their bonds, and receive no interest themselves, they had the remedy, at any moment they might use it, to compel a sale of the road, and a payment *pro rata* of both principal and interest; and the fact that such holders remained silent, knowing, as they did, that Morton and McCracken were receiving the interest regularly on their bonds, may be regarded as an assent on their part to the payment that was made, and having assented to such payment, they are in no position now to claim a priority over Morton and McCracken in the distribution of the proceeds of the sale of the road.

We now come to the cross-errors of Morton and McCracken. They claim that the interest on the bonds held by Humphreys and others, which accrued from 1871 to 1878, should be postponed until the bonds they held should be paid and satisfied. When the bonds were placed in the hands of Hatch & Son, of New York, for sale, this latter firm published a circular, which contained a description of the road, its connections with other roads, and the opportunity afforded for investment in its bonds. John Allen, the president of the road, published a notice in New York papers, that interest on the bonds would be paid at a certain bank in New York City. We perceive nothing in the notices or the conduct of Allen and others, who held the bonds, which could properly deceive or defraud Morton or McCracken, nor did they do anything which would estop them or their assignee from now sharing ratably with any other holder of the bonds in the proceeds

of the sale of the road.   They were under no legal obligation to present the bonds they held for payment of interest, nor did the law require them to notify or inform Morton and McCracken that no interest was being paid on their bonds. We perceive nothing in the record that would prevent them from sharing with other holders of bonds in the proceeds of sale.

But it is urged that the court erred in allowing interest on the interest warrants after their maturity.   The interest warrants are not set out in the record, and we have no means of determining whether they could properly draw interest after maturity or not.   If a decision on this question was deemed important, the interest warrants should have been incorporated in the record and abstract.   We have examined both, but are not able to find them.

We are of opinion that the decision of the circuit court on the applications for priority in the disposition of the proceeds of the sale of the road was correct, and it will be affirmed.

*Decree affirmed.*

Subsequently a rehearing was granted in this cause, whereupon the following additional opinion was filed:

Mr. JUSTICE SCHOLFIELD:   In the opinion heretofore filed in this case, the question of whether the court below erred in allowing interest on the interest warrants after their maturity, was not passed upon, because the interest warrants were not incorporated in the record.   A petition for rehearing was presented, praying that a rehearing be ordered, and leave given to amend the record so as to incorporate therein these warrants.   The petition was supported by a stipulation of the parties agreeing that the record should be amended by embodying the interest warrants therein, and the prayer of the petition was thereupon granted, and a rehearing was ordered for the sole purpose of enabling the court to pass upon the question of whether the court below erred in allowing interest

upon the interest warrants. The record having been amended in accordance with the stipulation, the question sought to be raised is now fairly before us.

The following is one of the interest warrants:

"$35.00.　　　PEORIA, PEKIN AND JACKSONVILLE RAILROAD CO.

"Interest warrant for thirty-five dollars, payable at the Importers' and Traders' Bank of the City of New York, on the first day of July, 1894, for six months interest on bond No. 753.

L. CHAPMAN, JR., *Secretary.*"

That interest was properly allowed and computed on this instrument, is settled by *Harper et al.* v. *Ely et al.* 70 Ill. 581, and the cases there referred to; and reference may also be made to *Clark* v. *Iowa City*, 20 Wall. 583, *Town of Genoa* v. *Woodruff et al.* 92 U. S. (2 Otto,) 502, and *Amy* v. *Dubuque*, 98 U. S. (8 Otto,) 473, holding the same doctrine.

The objection that, to fix the liability to pay interest, a demand at the place of payment and a refusal to pay must have been shown, is answered by *Butterfield* v. *Kinzie*, 1 Scam. 445, *President of New Hope, etc. Bridge Co.* v. *Perry et al.* 11 Ill. 467, and *Wood & Co.* v. *M. S. L. and T. Co.* 41 id. 267, which hold directly the reverse; and that is matter of defence to be pleaded and proved by the maker, that he was ready, at the time and place, to pay. The interest, as an incident to the debt, must go with the debt, and in giving priority to the warrants, priority to the interest must follow as a matter of course.

We perceive no cause to change our former ruling.

Mr. JUSTICE WALKER: I dissent to the previous and present opinions.

Mr. JUSTICE DICKEY: I think the coupons over-due when the principal became due, should be paid in full before distribution upon the principal.