## Peoples National Bank of Monmouth, Appellant, v. Frank J. Johnson et al., Appellees.

### Gen. No. 8,647.

508

Opinion filed September 20, 1933.

L. H. HANNA, for appellant.

E. P. FIELD and SAFFORD & SOULE, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.
Frank J. Johnson and Maude A. Johnson, his wife, executed and delivered to the Peoples National Bank of Monmouth, appellant herein and hereinafter referred to as the bank, their nine promissory notes, dated April 1, 1926, and each due five years after date, with interest at the rate of 5½ per cent. These notes were signed by Johnson and his wife, and payable to the order of Frank J. Johnson at the banking house of appellant. The payee, Johnson, indorsed each of the notes in blank and delivered them to the bank. Of the nine notes, three of them were for the sum of $2,000 each, four were for the sum of $1,000 each, and two were for the sum of $500 each. In order to secure the payment of these nine notes, Johnson and his wife executed and delivered to the bank a mortgage, by which they mortgaged and warranted to appellant 160 acres of land in Henderson county. This mortgage recited that it was given to secure the nine notes aggregating $11,000 and it was filed for record on April 5, 1926.

Subsequently the bank sold and transferred all of these nine notes, before maturity, for their full face value, together with accrued interest, to various different parties. Two of the $1,000 notes were sold and transferred by the bank shortly after their execution to Anna Frandsen, who continued to own, hold and receive the interest thereon for more than four years. On May 5, 1930, Anna Frandsen, represented by her brother, who was cashier of the bank, exchanged these

two $1,000 Johnson notes, to the bank for other notes executed by customers of the bank of an equal amount, which were then held and owned by the bank, and from May 5, 1930, the bank has held and owned these two $1,000 notes.

On April 1, 1931, the makers of the said nine notes defaulted in the payment of principal and interest on each of the notes, and on July 15, 1931, the bank filed its bill to foreclose the mortgage. Subsequently an amended bill was filed and Mildred Patterson Thomson, owner and holder of the three $2,000 notes, and Ida Paxton, owner and holder of one of the $500 notes, joined the bank as complainants. In this amended bill Mary C. Webster, administratrix of the estate of Jane Broderich, deceased, owner and holder of one of the $1,000 notes, H. U. Scott, trustee, also an owner and holder of one of the $1,000 notes, and the Cemetery Board of Managers of the City of Monmouth, owner and holder of the other $500 note, were made defendants. Answers and cross-bills were filed, and after the issues were made up, the cause was referred to the master, and subsequently the chancellor entered a decree as recommended by the master.

The decree, after finding the facts as herein recited, found the amount due the respective holders of the several notes and that the lien of the mortgage stands as security first for the payment of the several amounts so found due the holders of said notes other than appellant, and secondly for the payment of the amount found due upon the two notes owned by the bank. The decree further found that the complainants and cross complainants, other than appellant, were entitled to share pro rata in the proceeds of any sale that may be had of said mortgaged premises, and that their notes and their lien are entitled to priority over the two $1,000 notes held by the bank and that the lien of said mortgage, so far as the same secures the notes owned

by the parties other than the bank, is superior to the lien of said mortgage so far as it secured the two notes held and owned by the bank. The decree ordered that the bank should receive no part of the proceeds of the sale of the premises until the amounts so found due the holders of the other notes were paid in full and that appellant would then be entitled to any surplus arising out of the sale of the premises up to the amount so found due upon its two notes. From this decree the bank brings the record to this court for review by appeal.

It is conceded by counsel for the respective parties that the only question involved is whether appellees, as assignees of some of the several notes secured by the mortgage foreclosed in this proceeding, are entitled to priority over appellant or whether appellant, the owner and holder of two of the notes, should share pro rata with the other note holders in the proceeds which may be derived from a sale of the mortgaged premises to the extent of the amount due it upon the two notes which it held and owned when it commenced this suit.

Counsel for appellant cite a number of cases from other jurisdictions which support its contention and call our attention to the case of *Humphreys v. Morton,* 100 Ill. 592, and insist that it holds that when a mortgage is given to secure the payment of several notes, it is an incumbrance for the security of all the notes in whosesoever hands they may be until all are paid. In that case the trust deed sought to be foreclosed was executed by the Peoria, Pekin and Jacksonville Railroad Company to secure the payment of certain bonds issued by the company and all dated May 21, 1864, and all due July 1, 1894. The interest had been paid upon certain of the bonds prior to January 1, 1878, but upon others none of the interest coupons had been paid for several years previous to that date, and it was con-

tended that these interest coupons that had not been paid should be first paid before there should be a general pro rata distribution of the fund arising from the sale of the mortgaged property. The court held that the language of the trust deed implied that if there was not money enough realized from the sale of the mortgaged property to pay all the bonds and interest, then the same should be paid pro rata and that each bond and its unpaid interest was entitled to its pro rata share—in other words, that the holders of the bonds upon which interest had not been paid should have no priority as to the payment of such interest over the holders of other bonds upon which the interest had been paid. The question of priority between the mortgagee, as assignor, and an assignee of bonds secured by the trust deed did not arise in that case and there is nothing said in that opinion which is determinative of the question presented here.

Pomeroy's Equity Jurisprudence, vol. 3, sec. 1203, states the rule applicable to the facts as they appear in this record as follows: "When the mortgagee assigns one or more of the notes, and retains the remainder of the series, it is generally held that the assignee is entitled to a priority of lien as against the mortgagee, with respect to the note or notes so transferred; and this rule operates without regard to the order in which the notes held by the two parties mature. . . . The mortgagee having transferred the note and received the consideration therefor, it would be inequitable for him to deprive the assignee of any part of its value, by insisting upon a priority or even an equality of right in sharing the insufficient proceeds."

There is a very full and exhaustive annotation which has to do with priorities as between holders of different notes secured by the same mortgage in 50 A. L. R., beginning on page 543. The better rule, says the author of this annotation, as between an assignor and

assignee is that the assignee shall be preferred in the distribution of the proceeds of a sale of mortgaged property, and after quoting the rule as found in Pomeroy's Equity Jurisprudence, *supra,* makes the following comment, viz.: "The correctness of the statement of this eminent authority is hardly open to question; and an examination of reported cases shows that the rule as stated is supported by numerous decisions." 50 A. L. R. 564. The decisions in the several States are collected and referred to and it is stated that, while in a few cases the courts have held that a mortgagee is not precluded, by virtue of an assignment of one of several notes held by him, secured by the same mortgage, from competing with his assignee in the proceeds of the mortgaged property, still the majority of the courts hold otherwise.

In 27 Cyc. 1303, it is stated that when a mortgage is given to secure the payment of several different notes, it is an incumbrance upon the land for the security of all and each of the notes, in whosesoever hands they may legally be, until all are paid and when a part of the notes so secured are assigned, it is a question whether the whole mortgage or a part of it, or any interest therein, is assigned, depending upon the intention and agreement of the parties. Where the holder of several notes secured by a mortgage transfers one, retaining the others, the mortgage lien accompanies the assignment of the debt as an incident, and in case the proceeds of the mortgage are not sufficient to pay all the debts, the holder of the assigned debt has a preference and the assignor cannot compete with him. As supporting this doctrine, cases are cited from Alabama, Georgia, Indiana, Kentucky, Louisiana, Massachusetts, Minnesota, New Jersey, New York, Ohio, Rhode Island, Texas, Virginia and Wisconsin.

In 41 C. J. 687, it is said that although the mortgagee upon assigning a part of the mortgage notes

may reserve a proportion of the security for the notes retained by himself, he can do so only under a distinct agreement to that effect with the assignee. The author of this article, however, goes on to say that where the assignee had no reason to believe that he was to be preferred to his assignor, having had notice of the latter's lien, the rule that he is estopped to compete with the assignee should the proceeds be insufficient to satisfy the debt is inapplicable.

In *Berry v. Van Hise,* 148 Ga. 27, it was held that where a mortgagee transfers some of the notes secured by the mortgage and retains others, the holder of the transferred notes has a preference over the mortgagee if the security is insufficient to pay all the notes.

In *Knight v. Ray,* 75 Ala. 383, it appeared that Knight, the mortgagee, held three notes secured by a mortgage and transferred one of the notes to Mrs. Ray, retaining the other two and in holding that Mrs. Ray was entitled to a priority, the court said: "While the notes remained the property of Knight, the mortgaged lands were equally bound for the payment of each. When, however, Knight traded and transferred one of these notes to Mrs. Ray, retaining the others, although the transfer was by mere delivery, he clothed her with the right to be first paid out of the mortgaged property."

In *Lawson v. Warren,* 34 Okla. 94, 124 Pac. 46, 42 L, R. A. (N. S.) 183, it appeared that Robert M. Lee had executed two notes, each for $1,500, due respectively on October 1, 1908 and October 1, 1909. These notes were secured by a vendor's lien and were assigned, before maturity, for value, to the Arnold Mercantile Company, which indorsed for value the note due October 1, 1908 to Warren, the plaintiff. Subsequently Lewis C. Lawson was appointed receiver of the Arnold Mercantile Company and the note due October 1, 1909, came into his hands as such receiver.

In sustaining the decree of the lower court, which foreclosed the vendor's lien and ordered the property sold and the proceeds distributed, first, to the payment of the amount due upon the note held by Warren and the balance upon the note held by Lawson, the court stated that the question of priority of a series of notes secured by one mortgage when in the hands of different parties was a question upon which there is great diversity of opinion, and refers to the fact that one class of cases holds that the notes shall be paid in the order of their assignment and another class that the notes should take precedence in the order of their maturity and a third class that the proceeds should be applied pro rata in part payment of the several notes, irrespective of their dates of maturity or assignment. The court then said that the doctrines laid down by the two classes of decisions first mentioned were not sustained by reason or equity, and that the holders of notes irrespective of the order of assignment or the maturity of the notes are entitled to participate ratably in the fund derived from the security. The court in its opinion then says:

"This is not a conflict between two assignees, but is a conflict between the assignee of the first note and the receiver holding the second note, and as such, standing in the shoes of Arnold Mercantile Company. In this case the second note was retained by the Arnold Mercantile Company, and, as between it and Warren, its assignee, equity would require that its assignee be first paid out of the mortgage fund. 'An assignee of the mortgage with part of the debt is generally entitled to payment in preference to the mortgagee who retains one of the notes. . . . Where a holder of a mortgage assigns a part of it, although he warrants only the existence of the debt at the time of the transfer, it would be contrary to good faith to permit him, after receiving the money for this part of the claim, to come

into competition with his assignee, if the property prove insufficient to pay the claims of both. Unless the intention be plainly declared on the face of the assignment that the assignee is to share pro rata in the security with the assignor, the equitable construction of it is that it must in the first place be applied for the payment of the part of the debt which was assigned.' Jones Mort. 6th Ed. sec. 1701. . . . The reason the assignee is to be preferred is founded on the plainest principle of equity. When two notes are assigned to different persons, they are both presumed to have paid value, and they must share equally in the proceeds of the mortgaged property in order to preserve the equality which is equity. But to apply the same rule between the mortgagee and a person to whom he had transferred one of the notes would lead to inequality. For illustration, say that the mortgagee holds two notes for $1,000 each. He assigns one of them for value. The property securing their payment only brings $1,000, or enough to pay one note. If the mortgagee shares in the proceeds he will get out of the debt $1,500, the $1,000 he received for the first note and the $500 he receives from the proceeds of the mortgaged property, while the assignee for half the debt only receives $500. The mortgagee would thus receive more than if he had kept both notes. This is not right.'' (See note on priority as between holders of different notes secured by the mortgage in 42 L. R. A. [N. S.] 183.)

''Where a person holding all of a series of notes secured by mortgage assigns one of them the assignee is considered to be entitled to be preferred to the assignor and the receiver of the assignor in the distribution of the proceeds of the mortgaged property.'' 19 R. C. L. 659.

''If a mortgagee assigns one or more of several notes secured by the same trust deed or mortgage, and

retains the remainder, the assignee is entitled to priority of lien, as against the mortgagee with respect to the note or notes so transferred, without regard to the order in which the notes mature." Reeve Illinois Mortgages, Vol. 1, page 280. In support of the foregoing statement of the law, the author cites *Kuppenheimer v. Chicago Title and Trust Co.,* 163 Ill. App. 127. In that case it appeared that Emil Dickman executed nine notes, three of which were due one year after date, three due two years after date, and three due three years after date. Each note was made payable to the order of himself and by him indorsed and delivered to Kuppenheimer. At the same time Dickman executed a trust deed to secure the payment of these notes. One of the notes maturing two years after date was transferred by Kuppenheimer to the Chicago Title and Trust Company, and one of the notes maturing three years after date was transferred by Kuppenheimer to Christiana Brachvogel. Subsequently Kuppenheimer died testate, and at the time of his death he was the owner of an undivided two-fifths in four of the notes, two of which matured two years after date and the remaining two matured three years after date and the remaining two of which matured three years after date. A bill was subsequently filed to foreclose this trust deed, and after holding that the Chicago Title and Trust Company was entitled to priority of payment of its note maturing two years after date as against those held by the parties to the proceeding maturing three years after date, the court found that Christiana Brachvogel, as assignee, was entitled to priority for the amount due on her note as against those complainants who had taken title to the interest in these notes which Kuppenheimer had at the time of his death.

We do not find that the question presented by this record has been determined by our Supreme Court,

and in the absence of a controlling decision, this court must adopt the rule which other courts of the highest respectability have adopted and followed, especially when such a rule coincides with our conception of equity and fair dealing. This rule is that it would be inequitable to permit appellant, as assignor, to deprive appellees, who are assignees, of any part of the purchased value of the notes which they acquired from appellant. Appellant should not therefore be permitted to share in the proceeds derived from the sale of the mortgaged property in the event such proceeds are insufficient to pay the assignees upon these notes.

It is well settled in Illinois that a mortgagor executing an instrument to secure the payment of several notes may incorporate therein a provision regulating the order of payment of the notes so secured and may provide that all the notes are equally secured without preference or priority. *People for use of Kaskaskia Commons Permanent School Fund v. Mitchell,* 223 Ill. App. 8; *Good v. Woodruff,* 208 Ill. App. 147. The mortgage foreclosed in this proceeding did not provide, as many trust deeds and some mortgages do, that the notes thereby secured were on an equal footing and equally secured without any preference or priority whatsoever to the owner or owners of any of them. Appellant was the mortgagee and in the absence of some such provision, we hold that along with the sale and delivery of the notes to its cocomplainants and to cross complainants below, went an equity and this equity entitled the assignees to a preference over appellant in this proceeding.

The fact that the two notes now held by appellant were, shortly after their execution, sold by appellant to Anna Frandsen, and subsequently, but prior to their maturity, repurchased by appellant from her, cannot and does not affect this equity and can make no possible difference in this case. The reason for the rule

which gives appellees a preference is the same, and is just as applicable whether appellant owned the notes since their execution or whether during a part of the time since their execution it had the use of Anna Frandsen's money. In our opinion, the finding and decree of the chancellor is in accord with the weight of authority, is equitable and correctly determines the priorities of the parties to this proceeding. The decree of the circuit court is affirmed.

*Decree affirmed.*