Field, Leiter & Co. v. Colton.

FIELD, LEITER & CO. ET AL.

v.

JOHN B. COLTON.

1.  ADMINISTRATION OF ESTATES—EXECUTOR MAY NOT CONTINUE BUSINESS OF DECEASED.—It is not proper for an executor to invest the proceeds of the estate in the purchase of other goods to continue the business, without the consent of the *cestuis que trust;* nor can the county court confer upon him such authority.

2. EXECUTOR CANNOT DEAL WITH TRUST PROPERTY.—An executor can not, in his individual capacity, deal with himself as trustee in respect to the trust estate; and it will avail him nothing to show that his intention was honest and that there was no fraud in fact.

3. SALE OF GOODS TO HIMSELF AS EXECUTOR, TO CARRY ON BUSINESS.— An executor, himself a merchant, took goods from his own store and added to the stock of goods of his intestate, for the purpose of keeping up the stock of the latter, and thus realizing more for the estate. In such case, the sale to himself is not void, though forbidden in equity; but the executor cannot make profit for himself; and if he charges the estate with an advance upon the cost-price to him, such profit should be deducted from his account against the estate.

4. COMMISSIONS.—Where an executor, in order to make a better sale of a stock of goods left by his testator, added to such stock goods from his own stock, the commissions allowed to him for services as executor should be limited to six per cent. upon the amount of personal estate of his testator, exclusive of what was added by him to replenish the stock in trade.

5. CHARGING EXECUTOR WITH INTEREST.—An executor is chargeable with interest whenever he receives interest, or uses the money, or unreasonably retains it after he ought to pay it over. But in this case the circumstances do not warrant charging the executor with interest.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding. Opinion filed December 4, 1880.

Mr. L. DOUGLASS and Messrs. WILLOUGHBY & DAUGHERTY, for appellants; that it is a fraud upon the *cestui que trust* for the trustee to assume any position in regard to the trust fund in which his interest shall conflict with his duty, cited Hough v. Harvey, 71 Ill. 72; Sheldon v. Rice, 30 Mich. 296; Lytle v. Beveridge, 58 N. Y. 596; Thorp v. McCullum, 1 Gilm. 614; Kerr on Fraud, 157; 1 Perry on Trusts, 454.

If a trustee mingles the trust fund with his own, the *cestui que trust* may follow the property and claim all the blended property which the trustee cannot identify as his own: 1 Perry on Trusts, 447; Lupton v. White, 15 Ves. 432; Chedworth v. Edwards, 8 Ves. 46; Low v. Martin, 18 Ill. 290; Beach v. Smitz, 20 Ill. 186; Fuller v. Paige, 26 Ill. 358.

It is not necessary in such a case that the intent should be wrongful; the act is unlawful and the consequence must follow: *In re* Davis, 62 Mo. 450; Grigsby v. Wilkinson, 9 Bush, 91;

Hough v. Harvey, 71 Ill. 72; Billingsle v. Gleeson, 45 Ala. 540; Matter of Hurlbut, 39 Cal. 397; Johnson v. Hedrick, 33 Ind. 129; Powell v. Cooper, 42 Miss. 221.

Messrs. WILLIAMS & LAWRENCE, for appellee; that a sale by a trustee to himself is voidable merely cited Thorp v. McCullum, 1 Gilm. 614; Gilman R. R. Co. v. Kelly, 77 Ill. 426.

The *cestuis que trust* accepted the benefit of the executor's acts, having knowledge at the time of what he was doing, and they should now be estopped: Perry on Trusts, § 467; Gilman R. R. Co. v. Kelly, 77 Ill. 426; Bush v. Sherman, 80 Ill. 160.

PLEASANTS, J. To the application of appellee to be discharged as executor, upon his final account filed in the county court, appellants—who are creditors of the estate—objected and filed protests, respectively, charging him with neglect and mismanagement in divers particulars, to their injury.

After a hearing the county court made an order declaring said estate insolvent, and discharging said executor, from which they appealed to the circuit court, where it was affirmed, and they further appealed to this court. On the trial below the two cases were consolidated and are so brought here.

The record is very voluminous with exhibits and vouchers, and the testimony of numerous witnesses on each side touching the character, value and condition of the estate, and the details of its administration. We refer to it so far only as is necessary to present and dispose of the points here made.

It appears that the testator had been a retail dry goods merchant in the city of Galesburg, carrying usually a stock of the value of about $50,000. He died Oct. 5, 1872, leaving a short will, merely devising and bequeathing all his estate, after the payment of debts, to his wife, and appointing her executrix, and a codicil thereto appointing appellee, who was his son-in-law and a merchant in the same line of business in the same city, executor also. The widow declined to accept the trust, and on Oct. 10, 1872, letters testamentary were issued to appellee alone.

The stock on hand at the time of his death, according to the account taken by the clerks in the store and figured up by the

appraisers according to his cost-mark, which was ten per cent. above actual cost—without further appraisement by them, but adopted by the executor as his appraisement bill—amounted to nearly $35,000, which witnesses valued variously, from twenty-five to sixty per centum of the original cost; and the notes, accounts and moneys on hand ($200) to about $10,000. There was no other personal property except household furniture, which was not enough for the widow's award. The debts proved and allowed were about $53,000.

On the 21st of October the county court entered an order reciting that it was made to appear to the satisfaction of the court that the stock of goods constituted the bulk of the estate, and that to effect its sale to advantage it must be replenished, and declaring the executor "empowered to purchase and add to it from time to time, as in his judgment shall seem best to do, and pay for the same out of moneys received from sales made out of the general stock until the further order of this court."

Appellee accordingly continued the business, furnishing from his own store from time to time such goods as he thought needful to hold the trade and work off the others, for about eleven months, when the remnant was disposed of by auction.

The goods so furnished were not kept separate from the others, and the proceeds of the sales of both were deposited alike in his own name.

According to his account filed and approved, with itemized statements, he received from these sales

| | |
|---|---|
| In cash | $45,855.28 |
| In rent and clerk hire | 1,311.72 |
| And on notes, judgments and accounts | 9,512.01 |
| | $56,679.01 |

| | |
|---|---|
| Paid for goods to replenish the stock | $21,173.32 |
| Paid for clerk hire and rent | 1,311.72 |
| Paid for expenses | 6,626.13 |
| Paid for his own commissions | 2,500.00 |
| Paid for clerk's fees | 50.00 |
| Paid to creditors | 25,017.84 |
| | $56,679.01 |

He paid dividends of twenty per cent. on July 1, 1873; twenty per cent. on January 1, 1874; six per cent. on January 28, 1875; and five-eights per cent. on November 30, 1876.

Thus it is seen that considering the amount, character and condition of the estate, and the mode of its administration, it was settled with unusual and commendable promptness; and although the expenses seem large, we are impressed with the belief from the testimony that its management by the executor was not only honest but on the whole advantageous to all concerned.

The order of the county court purporting to empower him to replenish the stock, and the proceedings of appellee in pursuance thereof, were approved at the time by a large majority in number and interest of the creditors, and all have since receipted to him in full of their claims, except the appellants, of whom Field, Leiter & Co. were allowed December 22, 1872, $2,327.76, and Henry W. King & Co., January 27, 1873, $2,756—who refused their assent, and have receipted for only the amount actually paid to them, being 46⅝ per centum of their claims.

They do not impute to appellee actual fraud, or any purpose to waste the estate or wrong its creditors, but insist that his conduct has been unlawful, improper and injurious in fact; and that the court below should have wholly disallowed the credit in his account of $21,173.32 paid for goods claimed to have been purchased from himself, on the ground that he wrongfully blended them with those of the estate, and the proceeds of the sales of both, beyond the possibility of indentification— or at least so much of that item as was in excess of the lowest cost at which goods of the same kind, quality and amount could have been obtained elsewhere ; and in the latter case also a *pro rata* proportion of the items for expenses and commissions, and should have charged him with interest on all the money of the estate received by him and deposited in the bank in his own name.

It is not now contended, on behalf of appellee that he could rightfully invest the proceeds of the trust property in other goods to continue the business, without the consent of all the

*cestuis que trust.* Certainly it was not proper so to do. Perry on Trusts, Vol. 1, § 454, and cases cited in note. Nor could the county court confer upon him such authority. Still less was it proper to purchase from himself. In dealing as trustee with himself in his individual capacity he represented antagonistic interests, and therefore such dealing was forbidden. It avails nothing to show that the intention was honest and that there was no fraud in fact. The law shields him from temptation by an inflexible rule. Miles v. Wheeler, 43 Ill. 125; Thorp, v. Mc-Cullum, 1 Gilm. 625; Hough v. Harvey, 71 Ill. 75.

But we see here no such case as should in equity visit upon the executor the forfeiture of this large sum. Not only was there no wrongful intention to mingle his goods with those of the estate, but there was no negligence in respect to the mingling. The negligence or wrong, if any, was in respect to another and anterior proceeding. The goods referred to were mingled with the others, as being also the property of the estate; and we think it is in the interest of the estate to hold that they were. Furthermore, the proof shows the amount, kind and quality of the goods he furnished, and at what prices; and it also shows that they were all disposed of for the benefit of the estate at an advance, and the proceeds accounted for. So that there can be no great difficulty in ascertaining, in any view of the transaction, just how much he ought to be allowed. If it was not a sale, and the goods remained his property, he would be entitled at the least to the amount claimed, as so much money had and received to his use, less a *pro rata* share of the expense incurred in disposing of the whole stock. If it was a sale, the amount is as easily and certainly ascertainable by the rule of equity applicable to such a case. And if it can be so ascertained there should be no forfeiture. Although equity forbade his sale to himself as trustee, it does not necessarily follow that such sale was void. The prohibition is sufficiently sanctioned by the rule which disallows to the vendor in such a case all profits made, and charges him with all losses incurred by it. As was said in Rowan v. Kirkpatrick, 14 Ill. 10: "The principle is that a trustee shall not make any advantage to himself out of the trust fund, and that all profits which he has, or might, or

ought to have made, belong to the *cestui que trust.*" See, also, Willard v. Bassett, 27 Ill. 37, and Hough v. Harvey, *supra.*

The testimony strongly tends to show that in one sense the appellee, as he says, lost money by these sales: that is, that he sold for less than he would have charged to any other purchaser, but it is not denied that he got some advance upon the cost to him. The court below should have determined the amount and deducted it from this item of credit claimed.

Upon the same principle the commissions should be limited to a sum not exceeding six per centum on the amount of the personal estate, exclusive of what was furnished by appellee to replenish the stock in trade.

It does not appear that the new stock increased the expenses, which consisted of rent and clerk hire. Perhaps it lessened them by facilitating the sale of the old. The order of the county court may be fairly held to have authorized the disposal of the property at private sale in the manner pursued, and the expense incident to it is therefore properly chargeable to the estate.

Nor do we think it would be equitable to hold appellee to the payment of interest. The rule, as stated in Rowan v. Kirkpatrick, *supra*, is that the executor is chargeable with interest whenever he receives it, or uses the money, or unreasonably retains it after he ought to pay it over, or to account to the court; and it is said that " if the trustee is a trader or business man, he will be presumed to use and employ the money in his business if he deposits it in bank in his own name." Perry on Trusts, Vol. 1, § 664. But on this subject a large discretion is exercised by the courts in view of the facts of each particular case. Jones v. Foxhall, 15 Beav. 388; McKnight's Executors v. Walsh, 23 N. J. Eq. 136; Hill on Trustees, marg. p. 523–4, and note on p. 374.

Considering the need of money on hand to meet current liabilities and unforeseen contingencies, and the amount and promptness of his payments to the creditors, we are not disposed to examine the record very carefully to see just how much more he used trust funds in the interest of his private business, if he so used any, than private funds in the interest

of the trust business. The amount so deposited was either not large or not so long on hand as to warrant the conclusion that he made improper use of it. And it is not pretended that he received interest on trust funds or unreasonably retained them.

But for the error in respect to the two items above indicated, the order of the circuit court is reversed and the cause remanded.

Reversed and remanded.