Spencer v. World's Columbian Exposition.

---

# Earl B. Spencer, Trustee, v. World's Columbian Exposition.

1. RECEIVERS—*Expenses and Claims of Creditors.*—Where a receiver is appointed to carry on the business of an insolvent company upon the Exposition grounds, the rent or percentage of profits due from the company to the Exposition for the concession, is a part of the expenses which had necessarily to be paid by the receiver in order to be permitted to carry on the business, and should be paid by the receiver out of funds in his hands in preference to creditors.

Receivership.—Appeal from an order directing a receiver to pay certain moneys, etc., entered by the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding.   Heard in this court at the March term, 1895.   Opinion filed May 16, 1895.

WILLITS, CASE & ODELL, attorneys for appellant.

WALKER & EDDY, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This is an appeal from an order of the Circuit Court directing the receiver of the New England Clam Bake Company, an Illinois corporation, to pay to the appellee the sum of $14,493.74, being twenty-five per cent of the amount received by the receiver in the course of conducting the business of said company, under orders of the Circuit Court entered in the cause wherein said receiver was appointed, upon the petition and motion of the appellee, an intervening petitioner in said cause. The appellant is a party defendant in the cause in which the receiver was appointed, and is interested in the fund in the receiver's hands.

The New England Clam Bake Company was the assignee of a contract whereby a restaurant concession was granted by the appellee to one John S. Morris, and from the opening of the Columbian Exposition, until August 8, 1893, carried on the business authorized by such concession, in the Exposition grounds.

On that date the appellant, pursuant to a clause in certain trust deeds executed to him by the said company to secure the bonds of the company, took possession of all the property of the company on the Exposition grounds.

On the next day, August 9th, a creditor's bill was filed by a judgment creditor, against the company, to which the appellant was made a party defendant, and a receiver of the company was appointed, and the appellant was ordered, he not objecting, to deliver up to the receiver the possession of all of said property, without prejudice to his rights.

The receiver was ordered to re-open the restaurant and conduct the business in the manner in which it had theretofore been conducted, and thereupon proceeded to conduct the business, and continued so to do until the Exposition closed.

The gross receipts by the receiver from said business amounted to $57,974.95, and twenty-five per cent thereof is $14,493.74, which is the sum ordered, as aforesaid, to be paid to the appellee.

The material parts, so far as this issue is concerned, of the contract, or concession, granted to Morris, and to which the New England Clam Bake Company succeeded by assignment, are as follows:

" That the said party of the first part (The World's Columbian Exposition), for and in consideration of the promises and agreements of the said party of the second part (John S. Morris) hereinafter set forth, hereby promises and agrees that it will, and it hereby does, set apart for the exclusive use of the party of the second part from the first day of May, 1892, until forty-five (45) days after the close of the World's Columbian Exposition, the following described tract or parcel of land in Jackson Park, in the city of Chicago, Illinois, to wit: (Describing a parcel of land within the Exposition grounds.)

Said party of the first part further promises and agrees that it will permit said party of the second part to erect and maintain on said tract certain buildings, structures and appurtenances, and to use the same for the purposes of this contract, and to charge persons who do not hold a ticket for clam-bake and other food, for admission to said tract, not exceeding ten (10) cents, if, in the opinion of the chief of construction, the same is necessary for the protection of the said party of the second part from crowds or disorder, provided that, if the said holder of an admission ticket only, should, after admission, purchase anything, the said admission fee shall be credited upon the charge for said purchase.

The said party of the first part promises and agrees that it will conduct its water, sewerage and steam, gas and electric light systems to said tract so as to enable said party of the second part to make the necessary connections therewith, and will allow the use of said systems, and of the cold storage system, on the same basis as given to others holding similar rights.

Said party of the first part also promises and agrees that it will permit said party of the second part to conduct on said tract what is known as 'The New England Clam Bake,' and to charge for a clam bake complete, in season, not exceeding one dollar ($1). (Then follow numerous details concerning the business to be carried on, etc.)

The said party of the first part further promises and agrees that it will permit said party of the second part to post without and within said building such advertising signs relating to his own business as may be approved by the said chief of construction, the said party of the first part.

Said party of the second part, for and in consideration of the promises and agreements hereinbefore set forth, promises and agrees that it will erect and maintain on said tract all buildings and appurtenances, with their equipment, called for by this contract, and supply them with everything necessary for the purpose of carrying out the same.    *    *    *

The said party of the second part promises and agrees that he will erect all said structures, and supply them with everything called for in this contract, and conduct all business herein mentioned at his own expense, and it is understood by and between the parties hereto, that said party of the first part is not to be liable for any indebtedness incurred by said party of the second part, in and about the matters and things herein provided for.    *    *    *

Said party of the second part promises and agrees that he will faithfully account for, and pay over to the said party of the first part twenty-five (25) per cent of all his gross receipts under this contract, settlements to be had and payments to be made each day for the previous day's business at such times as shall be designated by the party of the first part.

Said party of the second part promises and agrees that the method of issuing and selling tickets, and collecting of admissions and tickets, and of arriving at the amount of gross receipts of the said party of the second part hereunder, shall be such as are approved by said party of the first part, which may prescribe the same should it so elect.

Said party of the second part also promises and agrees that he will keep full and true accounts of all the herein mentioned receipts, and that said accounts shall be open to inspection by said party of the first part through its officers or agents at any time during business hours.   *   *   *

It is understood by and between the parties hereto that a corporation may be organized to which corporation this contract may be assigned, and which corporation, upon accepting said assignment, will succeed to all the rights and privileges, and assume all the obligations of the said party of the second part hereunder, but said party of the second part shall not be released from said obligations, and that this contract, nor any part thereof, shall not be otherwise assigned, transferred, sub-let or disposed of, and any other assignment, transfer, sub-letting or disposition thereof shall be void."

It was pursuant to this last clause that the New England Clam Bake Company was organized, and succeeded to the rights of Morris.

From the foregoing extracts taken from the contract, something more than a mere concession to do business within the Exposition grounds was given; it was in effect a leasing of the premises described, and the consideration of twenty-five per cent of the gross receipts of the business might well be, in part, in the nature of rent.

The bill under which the receiver was appointed in no way attacked the validity or full force of said contract, but on the other hand, expressly recognized it, and showed that, in substance, all of value that was possessed by the insolvent company was its rights thereunder, and that unless a receiver were appointed, and allowed to conduct the business permitted by the contract, the only assets of the company would be wasted and lost.

It was only upon the theory that the business should be continued under the contract, that the bill was filed and the receiver appointed, in order that the creditors of the company might save to themselves the only thing of much value that the company had.

That rent and other expenses incurred by a receiver,

under orders of court, should be paid by the receiver out of funds in his hands in preference to creditors, needs no citation of authorities. The receiver took the property, of which the contract in question was the thing of chief value, *cum onere.*

The rent reserved, or percentage of profits, by whatever name it may be called, was a part of the expenses which had necessarily to be paid in order to be permitted to carry on the business, and the receiver was properly ordered to pay it. There was nothing to refer to a master, and the order was properly made upon the petition of the appellant.

We will not discuss the various cases cited by the appellant, nor the numerous phases argued in his behalf. The receiver took possession and remained in possession subject to the charges of the contract, and he should pay them.

In principle the case is controlled by our decision in White v. More, assignee of the Wah Mee Exposition Company, 54 Ill. App. 606, (which was a case possessing many features in common with this,) supported by Smith v. Goodman, 149 Ill. 75.

The decree of the Circuit Court will therefore be affirmed.