## Edward A. Filkins v. John Q. Adams.

1.  RECEIVERS—*Possession of Property.*—A receiver may apply to the court to aid him in obtaining possession of property which should be surrendered to him, but it is not necessarily a part of his duty to do so.

2.  SAME—*Rent of Premises—Expenses.*—The rent of premises occupied by a receiver while closing up the business, is a part of the expenses of administration.

3.  SAME—*Responsibility for Losses.*—Where a receiver acts with due caution, and for what, in his judgment, is for the best interest of the estate, and a loss occurs, without any fault on his part, he will not ordinarily be liable for the loss.

4.  SAME—*Compensation Where Losses Have Occurred.*—A receiver is entitled to compensation out of the funds in his hands, notwithstanding losses may have occurred.

**Bill to Adjust Co-partnership Transactions.**—Error to the Circuit Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1895.  Affirmed in part and reversed in part.  Opinion filed October 31, 1895.

MARTIN A. MAYO, attorney for plaintiff in error; HOLLETT & TINSMAN, of counsel.

SWIFT, CAMPBELL, JONES & MARTIN, attorneys for defendant in error.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

Adams was owner of premises demised by him to Philemon L. Austin, suited for a hotel.  Austin entered into a co-

partnership with a couple of women, who, on the 29th day of April, 1893, filed a bill against him to adjust the co-partnership transactions, and under that bill Filkins was appointed receiver and carried on the hotel business from May 11, 1893, to March 17, 1894. The hotel was in fact but a lodging house; no meals were furnished. Austin continued in possession of two rooms.

On a reference to the master, of the accounts of Filkins as receiver, the master found that Filkins should be charged the rent of those rooms, amounting to $312.50, and that charge raises the first question.

Filkins demanded rent from Austin and sent him bills every week. Three times in June and July, 1893, Filkins endeavored to get leave of the court to put Austin out, but the court would not give it. Adams' position now is that Filkins should have applied to the court again when it began to appear that the business would not be as profitable as had been expected. Adams had, by leave of the court, intervened in the suit as landlord of the premises on the 10th day of June, 1893. He was entitled to apply to the court for any proper order. Leopold v. People, 41 Ill. App. 293; 140 Ill. 552. While many cases hold that a receiver may apply to the court to aid him in obtaining possession of property which should be surrendered to him, none hold that it is his duty so to apply, and many hold that he can not apply, but such applications are to be made only by parties. Beach, Rec., Sec. 258; High, Rec., Sec. 181. He was not bound to imitate the widow mentioned in St. Luke's Gospel, Ch. 18, and ought not to be charged with Austin's rent.

The master reported that Filkins should have $600 as his compensation for services as receiver. Both Adams and Filkins excepted to the items. The court overruled both exceptions, yet by the decree directed that Filkins should pay to Adams all the money he had on hand as well as the room rent of Austin.

Now it is true, as we have held in several cases, that the rent of premises occupied by a receiver, or assignee of an insolvent, while closing up the business, is part of the ex-

penses of administration. White v. More, 54 Ill. App. 606. But the difficulty in this case is that the assets are all gone and that there is not enough money to pay Adams' rent and Filkins for his services. Adams argues that Filkins should not be paid, because he conducted the business at a loss after he knew that a loss would accrue. What was Filkins to do? If any party interested wished him to dispose of the furniture and close up, why did not such party apply to the court for an order to that effect? It is in the record that Adams, through his attorney, as late as February 27, 1893, only eighteen days before the close of the business, was asking for delay by Filkins in the sale of the furniture, hoping for a settlement.

What kind of settlement, and with whom it does not appear, but it was one that would " discharge the receiver and close the matter up." There is no evidence tending to show any neglect or breach of duty by the receiver.

Witnesses say his services should be valued higher than $600; but we are satisfied with the conclusion of the master upon that matter, and will not go into the circumstances.

Adams assigns as a cross-error that Filkins should have been charged with the expense of some master's reports. We are referred to no place in the record showing that the Circuit Court was ever called upon to act on such an item.

The rent that Adams ought to have is more than $2,000. The court found $1,675.20 in the hands of Filkins by denying him any compensation and charging him $312.50 for Austin's rent and directed the whole to be paid to Adams.

In our judgment the current expenses of the business, exclusive of the rent, must, in a deficiency of assets, be paid first. The money in hand is not, as in Hooven v. Burdette, 153 Ill. 672, the proceeds of any property of Adams converted into money; though it may not be easy to distinguish between proceeds of a sale and the value of the use; nor were the losses incurred by engaging in new enterprises. If it be true that early in the case, the court erred in not surrendering the premises to Adams, or permitting him to recover them by legal proceedings, the receiver

ought not to be the sufferer. The record indicates, however, that Adams did not press his claim for possession.

On the whole, we find that Filkins should be required to pay Adams $762.70 and no more, and we therefore affirm the decree for that amount, and reverse it as to the residue at the cost of the appellee.

MR. JUSTICE WATERMAN.

I am of the opinion that a receiver can not either withhold from the owner property to which he is entitled, or convert the same to the use of the estate and deprive of compensation him whose possessions, not a part of the estate have thus been used. By using the funds thus obtained in payment of the expenses of administration, the receiver becomes a debtor of the party whose property he has made use of, and can not set up his own claim to compensation for services against the right of the person to whom he is thus indebted.