# In re Estate of Winfield Scott Thurber, Deceased.

## Chicago Title & Trust Company, Administrator de bonis non, Appellee, v. Corporation of the Fine Arts Building, Appellant.

### Gen. No. 23,574.

1. EXECUTORS AND ADMINISTRATORS, § 204*—*what allowable as expenses of administration.* All expenses of an administrator which are proper to the conservation of the property of the estate should be allowed as expenses of administration.

2. EXECUTORS AND ADMINISTRATORS—*when claim for rent of premises used in conducting business of estate allowable as administration expense.* Under Rev. St. ch. 3, secs. 78, 133 (J. & A. ¶¶ 127, 182), a claim for the rent of premises used by the executrix to conduct the business of the estate is properly allowable as an expense of administration, where it appears that the testator had conducted business on the premises and that by reason of the peculiar character of the premises, with regard to their location and physical surroundings, a removal of the business would have resulted in a decided loss to it.

3. EXECUTORS AND ADMINISTRATORS, § 286*—*when trial de novo had on allowance of claim in Circuit Court.* On an appeal to the Circuit Court from an order of the Probate Court allowing the rent of premises as an expense of administration and awarding the petitioner priority, the questions of the allowance of the claim and its priority are before the Circuit Court as matters *de novo*, and the Circuit Court may, regardless of the reasons given by the Probate Court for allowing or disallowing the claim, make such order as it deems proper.

4. EXECUTORS AND ADMINISTRATORS—*when claim need not be filed in one year.* Expenses of administration are not debts of the decedent, for which claims are to be filed in a year, but are debts of the estate.

5. EXECUTORS AND ADMINISTRATORS—*when liability of estate for rent of premises used by executrix in conducting business not affected by assignment of lease.* The liability of an estate for rent of premises, which had been leased to the testator, during the period that they were occupied by the executrix while conducting the business of the estate is not affected by the fact that the executrix assigned the lease to a paper corporation, where it ap-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

pears that she held all of the stock, that the consideration intended to be given for the stock was a transfer of goods belonging to the estate, that the assignment was signed by the executrix as such and the acceptance was signed by her as president of the corporation, that the purpose of the organization of the corporation was to prevent the use of the testator's name in the line of business which he had pursued, and that no order transferring any of the assets to the corporation was made and no actual transfer of them was made.

6. EXECUTORS AND ADMINISTRATORS—*when estate not relieved from liability for rent of premises.* The liability of an estate for the rent of premises occupied by the executrix in conducting the business of the estate is not affected by the fact that a company from which her testator had originally subleased the premises paid the landlord a certain amount in satisfaction of its guaranty of the sublease.

Appeal from the Circuit Court of Cook county; the Hon. DAVID F. MATCHETT, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded with directions. Opinion filed March 5, 1918. *Certiorari* denied by Supreme Court (making opinion final).

TENNEY, HARDING & SHERMAN and WILSON, MOORE & McILVAINE, for appellant; HORACE KENT TENNEY, of counsel.

E. I. FRANKHAUSER and FREDERICK A. BANGS, for appellee; ARTHUR M. COX and RICHARD H. COLBY, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

The Corporation of the Fine Arts Building, hereafter called petitioner, was allowed by the Probate Court its claim for rent, with priority, in Re Estate of Winfield Scott Thurber, deceased. The administrator appealed to the Circuit Court, where petitioner's claim was disallowed, and from this order petitioner appeals to this court.

Petitioner, as lessor, leased a portion of the Fine Arts Building, on Michigan Boulevard in Chicago,

to the Bissell-Cowan Piano Company under a written lease from May 1, 1909, to April 30, 1919, at a monthly rental of $2,166.67. On May 25, 1910, the Piano Company assigned its lease to the Aeolian Company, which on January 27, 1913, assigned it to Winfield Scott Thurber. Each assignment was with the consent of the petitioner, the landlord, and conditioned upon the continuing liability of the assignor and upon his guaranty of performance by the assignee. Thurber by the last assignment assumed all the obligations of the lease, including the covenant to pay rent. He was engaged in the business of dealing in oil paintings, water-colors and etchings, and conducted a large and well-known business. The building was specially designed for those engaged in artistic business of this kind, and the tenants were restricted to those interested in artistic work. Thurber subleased those portions of the property he did not actually need for his own purposes, and continued to occupy the premises and carry on his business there until his death, which occurred in September, 1913. He left a will, appointing his widow, Martha C. Thurber, executrix and making her the sole beneficiary of his estate. She resigned as executrix in April, 1916, and the Chicago Title & Trust Company qualified as administrator *de bonis non*. The lease was never surrendered, but Mrs. Thurber, as executrix, continued to occupy the premises in carrying on the business of the estate and collected rents from the subtenants. On March 29, 1915, the petitioner deeded the premises to the trustees of the estate of Charles A. Chapin, reserving the rent due prior to the assignment, and the claim of petitioner, which is the subject of the controversy before us, is for rent during the time of the occupancy by the executrix and before petitioner had transferred the property, less certain amounts which the executrix paid for rental.

Three claims for rent were filed in the Probate

Court; one on November 14, 1913, for $2,166.67, rent for September, 1913; this was allowed. The second claim was filed September 26, 1914, which was allowed, for $6,225.01, which included a balance of rent for July, 1914, and the rent for August and September, 1914. At the same time another proof of claim was filed for rent due under the lease from October 1, 1914, to the end of the lease, the total sum being $119,166.67. After hearing on June 24, 1915, this last claim was allowed for $8,042.77, which is on the basis of rent from October 1, 1914, to the time that petitioner deeded the premises to the Chapin estate. The aggregate of these three claims allowed is $16,434.45. No appeal was taken by the executrix as to the first two claims but an appeal was taken from the allowance of the third.

On December 24, 1914, petitioner filed a petition in the Probate Court seeking to have priority of payment ordered for the three claims. This petition stated the terms of the lease, the allowance of the two claims above referred to and that they were still unpaid; alleged that the property upon the premises was taken by the executrix and that petitioner was therefore unable to enforce a lien by distress proceedings; that the premises had been used and occupied by her since Thurber's death; that she had collected rents from the subtenants, but had failed to pay the rent due petitioner. The petition also stated the entry of an order on October 1, 1913, allowing the executrix to continue the business, and referred to an order of November 12, 1913, giving her leave to sell the merchandise; that no report of sale had been made and that the merchandise had not been sold but was still the property of the estate and displayed for sale upon the premises. The petitioner asked that the two claims first above mentioned be declared to be prior liens upon the property, also that the executrix pay the claims for rent for October, November and Decem-

ber, 1914, as expenses of administration, to be a first charge against the assets, and that she also be required to pay rent for use and occupation of the premises under the lease as long as they were occupied and controlled by her, and further that she be required to pay to petitioner rents in her possession collected from subtenants. To this the executrix filed a demurrer, and upon hearing the Probate Court on June 24, 1915, entered a decree overruling the demurrer and finding that the allegations of the petition were true and that there was due petitioner the sum of $16,434.45; that petitioner was entitled under the terms of the lease to a prior lien for this amount upon the personal property which was located upon the premises at the death of Thurber. From this decree the executrix appealed to the Circuit Court. This brought two appeals to the Circuit Court, which were heard on one record: (1) The appeal from the order of June 24, 1915, allowing rent in the sum of $8,042.77; and (2) the appeal from the order entered on the same date awarding the petitioner priority of payment for the total amount of all three rent items. After hearing the Circuit Court ordered that the claim for allowance for rent after October 1, 1914, be denied; that the claim for a lien arising under the lease be denied; and held that the question whether petitioner was entitled to any payment as an expense of the administration of the estate or for use and occupation by the executrix should be left open for determination by the Probate Court.

We see no substantial reason why this claim should not be allowed as a proper expense of administration. Among the undisputed facts supporting this view are these: After the death of Thurber the executrix took possession of the leased premises and continued there to carry on Thurber's business. She represented to the Probate Court that the business would have been ruined if an attempt had been made to discontinue

it or transfer it to a new location. She also collected
from subtenants the rents due under the leases from
Thurber, and enforced these subleases by the entry
of judgments upon them in her name as executrix.
Immediately following her appointment she applied
to the Probate Court for leave to continue the busi-
ness of the decedent upon the premises, and on Octo-
ber 1, 1913, obtained an order allowing her to carry
on the business for a period of 60 days. Within that
time, that is, on November 12, 1913, she secured an-
other order finding that it was necessary to sell all
the merchandise of said deceased, appraised at
$61,910.50, to pay the debts of the estate, and direct-
ing her to sell the same at public or private sale.
No sales were made except those made upon the prem-
ises, and she continued the business thereon, display-
ing merchandise and making sales thereof. In the
report which she filed in the Probate Court she stated
that it was understood that Thurber would occupy
only a portion of the building and would sublet the
remainder to tenants; that she recognized the liability
of the lease and knew of no way to relieve the estate
therefrom except by continuing the business, which
might result in profit to the estate or enable her to
continue the lease and make payments thereunder dur-
ing the balance of its term; that if the stock of goods
were thrown upon the market for immediate sale
their peculiar value would be destroyed, which would
cause such a sacrifice as to render the estate insolvent;
that it was necessary to continue the business on the
premises as it had been conducted by Thurber, and
for that reason she had petitioned the court for the
entry of the order of October 1st allowing her to con-
tinue the business. It is not disputed that she so
continued to occupy the premises until March 4, 1916,
when she was directed to remove therefrom without
prejudice to the landlord's alleged prior claim and

charges.  She also paid a part of the rent due under the lease after she took possession.

·The evidence shows that the building owned by petitioner was specially built for the· accommodation of artists and of persons who dealt in paintings or other artistic goods, and that no other kinds of business were allowed therein, and that this gave it a special value in connection with the Thurber business, and gave to his large collection of paintings a special value which would have been seriously impaired if they were withdrawn from these premises; that Thurber had specially equipped the premises covered by his lease in order to conform to the character of his business, expending therefor the sum of $25,000, which would be lost if the executrix should move.  The evidence is also undisputed·that the rental value of the premises during the time the executrix occupied them was from $35,000 to $37,000 a year, which is a sum considerably larger than the rental reserved in the lease, which was the basis of the allowance by the Probate Court.  These facts would indicate that the lease was really an asset of the estate.  There is no evidence that there was any loss whatever to the estate by reason of the occupancy by the executrix.

Much of counsel's briefs and argument concern the question of priority of lien under the provisions of the lease.  We do not think it is necessary for us to determine this question.  Under the facts the claim falls so readily within the rule that such claims are properly chargeable to expenses of administration, that we do not feel called upon to pass upon any other grounds for their allowance.

It· is the well-settled law that all expenses of an administrator proper to the conservation of the property of the estate should be allowed as expenses of administration.  The peculiar character of the premises in question, both with regard to their·location and physical surroundings, makes it evident·that removal

would have resulted in a decided loss. This was evidently the opinion of the executrix, as indicated by her actions. It has been held many times under similar circumstances that such charges are properly allowable as expenses of administration. Among such cases are *Spencer v. World's Columbian Exposition*, 58 Ill. App. 637, affirmed 163 Ill. 117; *White v. More*, 54 Ill. App. 606; *Field, Leiter & Co. v. Colton*, 7 Ill. App. 379; *In re Peck*, 79 N. Y. App. Div. 296, 80 N. Y. Supp. 76; *In re Semple's Estate*, 189 Pa. St. 385; *In re Murray's Estate*, 3 Mills (N. Y.) 504, 82 N. Y. Supp. 394; *Dudley v. Sanborn*, 159 Mass. 185. Section 78, ch. 3, Administration of Estates, Illinois Statutes (J. & A. ¶ 127), provides that the expenses of administration shall be allowed and paid in due course, and section 133 (J. & A. ¶ 182) provides that reasonable costs and charges of administrators in collecting and defending claims of the estate and disposing of the same shall be allowed. We are of the opinion that under these sections, and the decisions of the courts and the facts before us, that the allowance of the claim is properly chargeable as an expense of administration.

We are not in accord with the position of the Circuit Court and counsel for the administrator that the Circuit Court could not pass upon the propriety of this allowance as an expense of administration. The question of the allowance of the claim and its priority was before the Circuit Court as a matter *de novo*, and regardless of any reasons given by the Probate Court in allowing or disallowing the claim, it was the duty of the Circuit Court to make whatever order it should deem proper. As was stated in *Harvey v. Harvey*, 87 Ill. 54: "The effect of the appeal was to wipe out the decision of the County Court, and the matter stood for trial *de novo* in the Circuit Court."

It is not necessary for us to pass upon the so-called

contingent claim, meaning the claim for rent for the balance of the entire term of the lease. The only matter before us is the allowance of the claim for rent during the time the executrix occupied the premises. This view of the matter also disposes of a number of other questions which are argued in the briefs, including the assertion that claims for expenses of administration should be filed within one year, like ordinary debts. Expenses of administration are not debts of the decedent but are debts of the estate.

The situation was not changed by the assignment of the lease from the executrix to a corporation called the Thurber Art Galleries on March 18, 1914. The evidence convincingly shows that this was merely a paper corporation. All of the stock was held by the executrix, and the only consideration intended to be given for the issuance of the stock was a transfer of goods belonging to the estate. The assignment was signed by Mrs. Thurber, executrix, and the acceptance on behalf of the Art Galleries corporation was signed by her as president. It clearly appears that the corporation was organized for the purpose of preventing other parties from using the name "Thurber" in the art business. There was no order transferring any of the assets of the estate, which would include the lease, to the corporation, and it is clear that there was no actual transfer made. In a report filed in court the executrix states that the corporation was formed for the purpose of protecting the Thurber name, but the report and account deal with the estate as if no corporation had been formed. There are many other facts which indicate that it was merely a "dummy" corporation and took, in fact, nothing by the purported assignment.

It appears that the Aeolian Company, which was the assignor of the lease to Thurber but remained as a guarantor of Thurber's agreement to pay rent, has paid to the petitioner the sum of $25,000 in satisfac-

tion of its guaranty. We do not see how this fact can be of any avail to the executrix. Payment by the Aeolian Company was not for the purpose of relieving the lessee from liability, and whether, in the event of collection by petitioner of the instant claims, a question of the subrogation of the Aeolian Company should arise is a matter in which the administrator is not concerned.

For the reasons above indicated the judgment of the Circuit Court is reversed and the cause remanded to that court with directions to enter a judgment for the Corporation of the Fine Arts Building in the sum of $16,412.41, with directions that it be paid by the administrator before the claims of other creditors, as an expense incurred in the administration of the estate.

*Reversed and remanded with directions.*