(No. 11010.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* PATRICK H. HART *et al.*—(THE CHICAGO BONDING AND SURETY COMPANY, Appellant.)

*Opinion filed October 23, 1917.*

1. BONDS—*secretary of bureau of labor statistics is authorized to receive license fees.* Under section 12 of the act relating to the bureau of labor statistics, as amended in 1909, the secretary of the board is authorized to receive and act as custodian of license fees for private employment agencies, and his bondsmen are liable for loss to the State caused by his appropriating such fees to his own use.

2. SAME—*State not bound by representations of an employee in application for bond.* The State is not bound by the representations of an employee of the State, in his application for a bond, with respect to the approximate amount of money he would handle in a year, as the State is not bound to know or inquire into the method of a bonding company in determining whether it will become a surety.

3. SAME—*effect of knowledge by the State that an employee is mingling public funds with his own.* The mere fact that an officer or officers of the State knew that a bonded employee was mingling public funds with his private funds is no defense to a suit by the State on his bond, as the State owes no duty to a bonding company to use diligence to save such company from loss.

APPEAL from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding.

GILLESPIE & FITZGERALD, and SABATH, STAFFORD & SA-
BATH, (CHARLES B. STAFFORD, of counsel,) for appellant.

P. J. LUCEY, A. B. GARRETT, and JACOB R. CREIGHTON,
for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellee sued Patrick H. Hart as principal, and appel-
lant, the Chicago Bonding and Surety Company, as surety,
in an action of debt upon an official bond given to appellee
by Hart as secretary of the bureau of labor statistics. The
declaration charges that in said bond it was provided that
if said Patrick H. Hart should faithfully perform his duties
as such secretary and should faithfully account for and pay
over to the parties entitled thereto all moneys that should
come into his hands by virtue of said office, and should
account and turn over to his successor in office all proper-
ties, moneys, books and papers that should come into his
hands by virtue of said office, then the said writing obliga-
tory was to be void, otherwise to remain in full force and
effect. The breach of the bond assigned is that after the
appointment of Hart, and during the time he was such sec-
retary, prior to the said 20th day of April, 1914, to-wit,
between said date and December 31, 1913, divers sums of
money due appellee as fees and taxes for licenses issued to
divers persons, firms and companies for the privilege of
conducting and carrying on in this State the business of
private employment agencies, to-wit, $4375 in money, came
to the hands of said Hart as such secretary, all of which
sums it was his duty, as such secretary, to collect and ac-
count for and pay over to the State Treasurer as the money
of appellee; that he failed to regard and perform that duty,
as such secretary, during or since that time and converted
and disposed of said sums to his own use, and has neglected
and refused on request, and still refuses, to pay over said
sum, or any part thereof, to appellee or its treasurer. A

copy of the bond and a bill of particulars were attached to and filed with the declaration, and Hart was defaulted.

Appellant filed its plea of *non est factum* without verification, and therewith gave notice of five special defenses, three of which, upon motion of appellee, were stricken from the case. The other two, upon which the cause proceeded to trial, are, in substance, (1) appellant denies that appellee has suffered damage and loss in any amount, as alleged by it, and insists on strict proof of the various amounts it is alleged that Hart, as such secretary, received and failed to account for and pay over to appellee's treasurer; (3) that the duties of Hart, as such secretary, are fixed by the statute, and nowhere in the said statute is it provided that Hart, as such secretary, shall receive or collect any of said sums alleged to have come into his hands, and that there was no breach of any official duty of Hart for which appellant is liable as his surety.

A jury was waived, and on the trial of the cause the bond was produced and introduced in evidence and the evidence was heard on the special matters in issue. The court found against appellant, and found the debt to be $10,000 and the damages of appellee $4375. Judgment was rendered accordingly, and this appeal followed.

The plea of *non est factum* was apparently filed to permit the giving of notice of the special defenses aforesaid, and no question arises under that plea.

The evidence establishes the fact that Patrick H. Hart was appointed secretary of the bureau of labor statistics in 1913 and gave said bond, with appellant as surety, in the sum of $10,000, which was duly approved by the Governor. He kept at the Sangamon Loan and Trust Company's bank, in Springfield, an official account up to the close of December, 1913, when he closed up said official account and made no more deposits at said bank or at any other bank in his name, as such official. That account was closed by a check signed by Hart, payable to William Ryan, Jr., State Treas-

urer, for $3716.34, the same being moneys paid to him for licenses of private employment agencies and interest thereon. Thereafter Hart continued in said office and collected from Richard J. Knight, chief inspector of private agencies, at various times up to March 28 or 29, 1914, fees for licenses of private employment agencies amounting in all to the sum of $4375. Those moneys were received by Hart in his official capacity and were sent to him by Knight, to be retained in his official capacity, as shown by the positive testimony of Knight, by the letters of Knight to Hart in which he made the remittances, and by the letters of Hart in which he acknowledged the receipt of the remittances. All these last sums received from Knight by Hart were deposited by him in the Ridgley National Bank, at Springfield, in a private account in his name, and were never paid over to the State Treasurer by Hart or to anyone authorized to receive them, as shown by the testimony of Luke D. McCoy, who was appointed as successor to Hart as secretary of the bureau of labor statistics in 1914, and who was acting secretary from about April 1, 1914, to September 1, 1914, after Hart had abandoned and left the office, about March 30, 1914. McCoy's evidence was corroborated by several other witnesses and exhibits in evidence.

It is argued by appellant's counsel that the evidence fails to show that Hart received the first five items or sums named in the bill of particulars, amounting to $250, from Knight after December 31, 1913, the day he made settlement with State Treasurer Ryan, as Knight remitted said sum to Hart at Springfield in a letter written by Knight at Chicago on December 30, 1913, and that therefore the evidence is not clear that Hart had not paid this sum to the State Treasurer in said settlement. The evidence as to these items clearly shows that the money was deposited in the Ridgley National Bank in Hart's individual account and that no money in that account was paid to or turned over to said treasurer. The appellant admitted that all the items

composing the $4375 of license moneys received by Hart were deposited by him in the Ridgley National Bank. There still remains a balance due Hart on that account by the Ridgley National Bank of $391.01, the bank having paid all of said moneys to Hart's credit, except said balance, to various parties on private checks of Hart. The testimony of McCoy, Hart's successor, is, in substance, that he checked the account of Hart after his disappearance from the office and found him short to the amount of $4375,— *i. e.,* that he had collected that amount for license fees, as aforesaid, which had not been paid over or accounted for by him. His evidence, with the other evidence in the case, was sufficient to warrant the judgment of the court, as appellant's evidence in no way rebutted the case made by appellee.

Appellant's contention that as surety it is not liable to appellee because the license moneys paid to Hart by Knight constituted no fund receivable by Hart by virtue of his office is not tenable. The law relating to the bureau of labor statistics was revised by the act approved June 10, 1909. (Laws of 1909, p. 199.) That act made it the duty of the Governor of this State, with the advice of the senate, to appoint a board of commissioners of labor, consisting of five members, who shall hold their office for two years or until their successors are appointed, and who shall organize by electing a secretary and a president, the secretary not to be a member of their body or to have a voice in the deliberations of the board, and shall hold his office for two years. Section 2 of the act prescribes their duties, and section 3 thereof prescribes that the members of the board and the secretary shall be paid their compensation by the Auditor of Public Accounts issuing his warrant on the Treasurer in their favor, and that their traveling and incidental expenses shall be paid in the same way on their voucher, sworn to by them and approved by the president of the board and the Governor.

By an act approved June 15, 1909, it is provided that no person shall open, keep or carry on any employment agency in this State without first procuring a license therefor from the State bureau of labor statistics, and section 1 fixes the amount of the license, designates the manner in which application therefor shall be made, and prescribes various duties to be performed by such agencies. Section 8 of the act provides that the enforcement of said act shall be entrusted to the State board of commissioners of labor and an officer to be known as chief inspector of private employment agencies, and other inspectors to be appointed by the chief inspector with the approval of the Governor. Section 10 of the act provides that the chief inspector's salary and the other inspectors' salaries shall be paid from the license fees or fines collected under the provisions of the act, and that the chief inspector shall be allowed necessary printing, stationery and postage, and shall be furnished a suitable room and necessary office furniture and such assistance in the way of clerks and stenographers as the office requires, the expense of which is to be paid from said funds collected under the act. It also provides that should the license fees become exhausted the commissioners of labor, on approval of the Governor, may suspend any or all of said inspectors. It further provides that the said commissioners of labor shall at the end of each fiscal year make an account of said license fee fund and pay into the State treasury whatever balance shall remain after having paid the necessary disbursements for the purpose of enforcing the provisions of the act. By section 12 thereof, sections 9, 10 and 11 of a similar act approved May 11, 1903, and all acts and parts of acts inconsistent with the said act, are repealed. (Laws of 1909, pp. 213-220, inclusive.)

Section 12 of said act of 1903 was amended by an act approved June 5, 1909, so as to read as follows: "All money or moneys received from fees and fines shall be held by the said commissioners of labor, and shall constitute a

fund for the purpose of enforcing the provisions of this act; the secretary of the commissioners of labor shall act as custodian of the fees and fine fund and shall execute a bond to the People of the State of Illinois with good and sufficient securities, in a sum to be fixed by the commissioners of labor conditioned upon the faithful performance· of his duties. The bond shall be approved by the Governor and then filed with the Secretary of State. All expenditures from the fee fund or any other fund under the control of the commissioners of labor shall be paid on itemized vouchers certified to by the president of the commissioners of labor and approved by the Governor of the State of Illinois, and the said commissioners shall, at the end of each fiscal year, make an account of said fund and pay into the State treasury whatever balance shall remain after paying the necessary disbursements for the purpose of enforcing the provisions of this act." (Laws of 1909, p. 201.)

The foregoing acts are all consistent with each other and are all independent acts not repealed by other acts, by implication or otherwise. It appears clearly from said acts that the fine and fee funds referred to above are under the express control of the board of commissioners of labor and that they are to be distributed and paid out on its order. The secretary of the board is expressly made the custodian of such funds, and as such secretary it was his duty to receive and hold such funds and to pay the same out on the order of said board, and the statute specifically requires him to give bond and security as such custodian. The fiscal year for the State of Illinois begins on the first of October and ends on the 30th of September of each and every year. Strictly speaking, it was the duty of Hart to pay over the said funds remaining in his hands to his successor, Luke D. McCoy, who, in turn, should hold the funds subject to the order of the said board, and no part of said funds was payable into the State treasury until the close of the year, upon the accounting and order of said board. The evi-

dence, nevertheless, clearly showed the right of the State
to recover, in whom the right of action is vested.

The court did not err in striking special defenses 2, 4
and 5, which are, in substance, as follows: (2) That the
largest amount of recovery in this case cannot exceed $25
in any event, and that said bond is not binding on appel-
lant because it was induced to sign said bond by reason
of the representation in the application for the said bond ·
that the approximate amount of money handled by said
Hart during the year would be $2000 and that the largest
amount under his control at any time would be $20; (4)
that appellant is not liable upon said bond for the reason
that appellee had notice that said Hart was confusing the
funds of appellee and was mingling the same with his own
personal funds, contrary to the terms of the application and
the provisions of the Illinois statute, and it then became
and was the duty of appellee, as obligee in the bond, to
stop such practice, and for failure so to do appellant be-
came discharged from any liability under said bond as to
moneys received by Hart after notice of such wrongful
acts; (5) that appellee, as such obligee, by the exercise of
ordinary care and diligence could have become advised of
Hart's willful disregard of his duties and have protected
itself against such loss but failed so to do.

The matter of special defense relied on in appellant's
defense 2 constitutes no defense whatever against the State.
It is not averred that the State made any such misrepresen-
tation, nor any agent of the State, in the procuring of the
said bond. The State could not be bound by the represen-
tations of Hart in his application for a bond, so far as any-
thing appears by way of allegations in said plea or notice.
All the State was required to do was to accept and approve
the bond by its proper officers, and it was not bound to
know or inquire into the manner or method of the company
in determining whether or not it would become a surety on
the bond. There is not even an allegation in the special

matter that the State knew of the misrepresentation. The same is true as to the special matter set forth in appellant's defense 4. Mere knowledge on the part of appellee that Hart was confusing the funds of appellee and was mingling them with his own, contrary to the application and contrary to the statute, and its failure to prevent the same, does not relieve appellant of its liability on the bond. Appellant's obligation to the State was to make good any default of Hart in his accounting of said funds, and the mere failure of any other State officer or officers to take necessary steps to prevent further loss or further default on the part of Hart would not relieve appellant from its obligation on the bond to make good such loss or default. The State owed appellant no duty to exercise diligence to learn that Hart was acting dishonestly and was liable to make default, and therefore special matters of defense set up in defenses 4 and 5 were properly stricken from the files. There is no allegation in either of said pleas that the State had knowledge that said Hart had been guilty of any dishonest conduct or was intending to abscond or to make default in payments. Allegations that he was mixing the State's funds with his own funds do not amount to such a charge. Appellant is in the business of becoming a surety on public bonds for a profit and the duty is cast upon it to use due diligence to protect itself against said losses, and it cannot relieve itself from liability on such a bond as was given in this case by showing that the State has not been diligent to save it from loss. There is no allegation that the State has committed any fraud upon appellant by encouraging or being a party to Hart's fraud or by the concealment of any knowledge on the part of the State that Hart had committed frauds or defaults against the State.

The circuit court committed no error calling for the reversal of this judgment, and it is therefore affirmed.

*Judgment affirmed.*