## The People of the State of Illinois for use of Kaskaskia Commons Permanent School Fund, Appellant, v. Edward E. Mitchell, Appellee.

1. MORTGAGES—*rights of holders of secured notes maturing on different dates.* Where a mortgage or trust deed has been given to secure the payment of several notes becoming due on different dates, the owners of the notes, in the absence of any special provisions to the contrary, have a priority of lien in the order in which the notes become payable, and the owner of the note first maturing has the right to foreclose and sell the property to satisfy his debt, and the holders of the other notes can redeem in succession according to their priority as they become due.

2. MORTGAGES—*validity of stipulation as to priority of notes secured.* A mortgage or trust deed given to secure several notes becoming due on different dates may legally stipulate that the owners of other notes than those first falling due may have a priority of lien, or that all of the notes are on an equal footing.

3. MORTGAGES—*mortgage as mere incident to debt.* A mortgage securing a debt is a mere incident to the debt.

4. SCHOOLS AND SCHOOL DISTRICTS—*what intended by statute relating to investment of funds in mortgages.* A statute requiring that certain school funds be invested in certain specified bonds or in "good first mortgages on real estate" was intended to insure that the investment of such funds should be a first debt in priority of lien under the mortgage and not simply one of a number of the debts of the mortgagor, secured by a first mortgage, and of equal priority.

5. SCHOOLS AND SCHOOL DISTRICTS—*investment of funds secured by deed of trust as investment in mortgage.* An investment of school funds secured by a deed of trust will be considered as an investment in a "good first mortgage" within the provisions of

The People v. Mitchell, 223 Ill. App. 8.

a statute specifying the kinds of securities in which such funds may be invested.

6. STATES—*what will not relieve treasurer from liability for illegal investment of school funds.* A State treasurer is not relieved from liability for the investment of school funds in improper securities in violation of plain statutory provisions by the fact that his successors accepted such securities and the interest thereon without objection and with full knowledge of their character.

7. STATES—*what will not protect treasurer from liability for illegal investment of school funds.* The fact that the Attorney General was consulted and advised that the investment of school funds in certain notes secured by trust deed was within the statutory requirement, that such funds be invested in certain specified securities or in good first mortgages, will not protect the State treasurer from liability where the investment is in fact in violation of a plain, unambiguous requirement of the statute.

8. STATES—*what will not relieve treasurer from liability for illegal investment of school funds.* Where the investment of school funds by a State treasurer was illegal, the failure of his successor to realize on the investments when he might have done so will not relieve such treasurer from liability on his bond.

9. PLEADING—*when replications do not admit that pleas state complete defenses.* Where replications filed after the overruling of demurrers to pleas did not set up new matter by way of confession and avoidance but denied the pleas and realleged the matters set forth in the declaration, the plaintiff did not, by filing the replications instead of standing by the demurrers, admit that each plea stated a complete defense unless the new matter set up was sufficient to avoid such complete defense.

10. APPEAL AND ERROR—*when assignment of cross error based on sustaining of demurrers is waived.* Where appellee presents no argument and cites no authorities to sustain his contention that the court erred in sustaining demurrers to certain of his pleas, the assignment of cross error thereon will be considered as waived.

11. OFFICIAL BONDS—*when demurrer to plea of non damnificatus should be overruled.* Where it is evident from the pleadings that the official bond sued upon provided for a penalty and not for liquidated damages, the recovery, if any, could be for only such damages as the proof showed had been sustained, and if the proof showed no damages, a demurrer to a plea of *non damnificatus* should have been overruled.

12. STATES—*what pleas in action on treasurer's bond for illegal investment of school funds demurrable.* In an action upon the bond of a State treasurer for losses sustained by illegal investment of school funds in the bonds of a milling company, pleas that all of the loss alleged over a certain amount could have been

avoided if his successor and the auditor had deposited the bonds with the trustee and a committee of bondholders in the foreclosure suit, that all loss over a certain amount could have been avoided if they had accepted from the referee in bankruptcy their pro rata part of the proceeds; and that the bonds were generally considered to be first mortgage securities on real estate, presented no defenses and were obnoxious to demurrer.

Appeal from the Circuit Court of Jackson county; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the March term, 1921. Reversed and remanded. Opinion filed, November 10, 1921. Rehearing denied April 6, 1922.

EDWARD J. BRUNDAGE, NOAH C. BAINUM and JESSE E. BARTLEY, for appellant.

CHARLES E. FEIRICH and JOHN J. HEALY, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This is an action of debt brought by the appellant on the official bond of the appellee as State treasurer of the State of Illinois for the two-year term of 1911 and 1912.

The Forty-sixth General Assembly by an Act approved June 16, 1909 (Session Laws of 1909, pp. 425-430) provided for the sale of the Kaskaskia Commons upon the Island of Kaskaskia in the county of Randolph and the creating of the proceeds of such sale into a fund known as the "Kaskasia Commons Permanent School Fund." Section 13 of that Act contained the following language material to this case: "It is hereby made the duty of the State Treasurer and the State Auditor * * * to keep all the principal funds of said funds invested on good interest bearing school, municipal, county or State bonds, or good first mortgages on real estate, so as to bring at least 5 per cent interest; said investments to be made by the State Treasurer by and with the ap-

proval of the State Auditor, who shall be keeper of said securities and the Auditor shall keep an accurate and correct record thereof.'' The declaration, after setting forth the election of appellee as such State Treasurer, the execution and approval of his bond and his qualifying for the office, assigned as a breach of his bond that he had in his possession and under his control as such State treasurer certain moneys which he was by law required to keep in a separate fund designated as the ''Kaskaskia Commons Permanent School Fund''; that it was his duty to keep said funds invested in school, municipal, county or State bonds, or good first mortgages on real estate so as to bring at least 5 per cent interest, said investments to be made by and with the approval of the State auditor of the State of Illinois; that appellee did not keep all of said funds so invested and did not deliver to his successors in office all the moneys of said fund but that on the contrary he did on the 28th day of September, 1912, with the approval of James S. McCullough, the auditor of public accounts of the State of Illinois, invest $20,000 of said fund in the purchase of 30 certain bonds, issued by the United Flour Mills Company, a private industrial corporation organized under the laws of the State of Minnesota; that he deposited said bonds with the then auditor of public accounts of the State of Illinois; that said bonds so purchased were a part of a series of bonds, 600 in number, issued by said company under date of February 1, 1911, of the aggregate face value of $500,000 and bearing interest at the rate of 6 per cent per annum and maturing in annual series commencing with the 1st day of February, 1916, and extending to the 1st day of February, 1930; that each of said bonds are of like date and tenor except as to the date of maturity, number and denomination, and each purports on its face to be secured by first mortgage or

deed of trust on the property of said United Flour Mills Company located in the States of Minnesota and South Dakota; that said mortgage or trust deed ran to the Continental and Commercial Trust and Savings Bank and Frank H. Jones, as trustee, for the equal pro rata benefit and security of the holders of the above-mentioned bonds at whatever period the same might be issued without preference or priority of one bond over the other; that said mortgage or trust deed authorized the issuing of such bonds to the number of 600 and to the aggregate face value of $500,000 and provided that in the event of a default in the payment of the principal or interest of said bonds or any of them at maturity or in case of default in any of the provisions of said trust deed, the said trustees should take possession of said property so mortgaged and manage and operate the same, or sell the same or foreclose said trust deed, and the proceeds thereof remaining after the payment of their just expenses and lawful charges they should pay over ratably to and among the parties holding said bonds (without preference or priority) and coupons (paying all overdue coupons first), so far as may be necessary to pay the amounts then due upon the same, including the principal and interest computed to the time of making the payments, and if any of said proceeds then remain, such remainder should be paid over to the company; that bonds were issued in the face value of $500,000 and were sold to and purchased by divers persons, and that each of said bonds according to the tenor and effect thereof and express provisions of such trust deed became a lien upon said real estate and property so mortgaged pro rata and without preference or priority to any of them; that said bonds were purchased for the sum of $20,000 and registered under the name of "E. E. Mitchell, State Treasurer for use of the Kaskaskia Commons Permanent School Fund" and deposited with the auditor of public accounts; that said 30 bonds of the aggregate face value

of $20,000, so purchased by appellee with the approval of the then auditor of public accounts, were the only bonds of said United Flour Mills Company purchased for or on behalf of said school fund; that the remainder of the issue of said bonds were sold to and owned by other separate and distinct persons and that said deed of trust created concurrent lien in favor of the several holders of said bonds pro rata without preference or priority and without reference as to time of maturity or when said bonds were issued, and said trust deed was the only instrument creating or purporting to create any lien on said property of said company to secure said bonds; that appellee did not keep the funds of said "Kaskaskia Commons Permanent School Fund" invested in good interest bearing school, municipal, county or State bonds or good first mortgages on real estate, but on the contrary did invest $20,000 of said funds in bonds of the United Flour Mills Company unsecured by a first mortgage on real estate; that no part of the principal of said $20,000 so expended and paid out by appellee has ever been paid or replaced to or in said "Kaskaskia Commons Permanent School Fund"; that on the 23d day of March, 1916, interest had accrued and was unpaid on said bonds to the amount of $744.56; that no part of said accrued interest, and no interest on said bonds since the 23rd of March, 1916, has ever been paid to or replaced in said fund; that on the 3rd of April, 1916, demand was made by the then State treasurer and the then auditor of public accounts upon appellee, to pay and restore said sum of $20,000, together with such accrued interest to such fund; that the said appellee has failed, neglected and refused so to do.

One other breach is alleged but it is substantially the same as the foregoing except that particular attention is called to a provision of said trust deed prohibiting any holder or holders of any of said bonds, or the interest coupons thereof, from instituting any action or proceeding at law or in equity, for the fore-

closure thereof or for the appointment of a receiver, except upon the request in writing of at least one-fourth in amount of such bonds, at the time such remedy should become available requesting the said trustees so to do.

To this declaration appellee filed 14 pleas. Plea No. 1 is a plea of *nil debet* to which the court sustained a demurrer. Plea No. 2 is a plea of *non est factum* and concluded to the country. To this plea a *similiter* was filed and issue joined thereon. Plea No. 3 was a plea of the performance of all the conditions of the bond sued on. The court sustained the demurrer to this plea. Plea No. 4 was a plea of *non damnificatus* to which the court also sustained a demurrer. The nature of the remaining 10 pleas is sufficiently set forth hereinafter. The court sustained demurrers to pleas 1, 3, 4, 11, 12 and 13 and overruled demurrers to pleas 5, 6, 7, 8, 9, 10 and 14. Appellant filed replication to pleas 5, 6, 7 and 8 and abided his demurrers to pleas 9, 10 and 14. The court sustained a demurrer to the replications to pleas 5, 6, 7 and 8 and appellant abided by the replications. Subsequently the court entered judgment in bar of the suit against appellant and from such judgment this appeal has been taken. Appellant has assigned and urged as error the court's action in overruling the demurrer to pleas 9, 10 and 14 in sustaining the demurrer to the replications to pleas 5, 6, 7 and 8 and in rendering judgment in bar in favor of appellee and against appellant. Appellee has assigned as cross error the court's action in sustaining demurrers to pleas 1, 3, 4, 11, 12 and 13. No mention, however, is made in the argument as to the court's action in sustaining demurrer to pleas 1 and 3 and that assignment of cross error is therefore considered as waived. Pleas 5, 6 and 7 set forth the facts relative to the investment of the fund in question substantially as alleged in the declaration and aver that the security so purchased was a ''good first mortgage

on real estate.'' The defense here set up involves the principal controversy between the parties and at issue in this case, so we will first discuss its merits, waiving temporarily the strictly technical condition of the pleadings.

Appellant contends that the investment of the funds in question in the purchase of a portion of a series of notes falling due at different dates, even though secured by a first mortgage on real estate, is not such an investment on ''good first mortgages on real estate'' as contemplated by the statute of 1909. It appears from the pleadings that the notes authorized to be issued under the deed of trust were 600 in number and numbered from 1 to 600; that the notes of the lowest numbers matured first. It also appears that appellee did not purchase the lowest numbered of these notes, or, in other words, he did not purchase the notes first maturing. Appellant contends that in the absence of any agreement to the contrary, the owners of the notes first maturing would, under the decisions of this State, have a first lien against the property covered by the trust deed which would be prior to the lien of the owners of notes maturing at a later date. Appellant further contends that even though the provisions of the trust deed are that in the event of the default in the payment of the principal or interest of any of the notes the trustees should take charge of and operate the business or sell the property and distribute the proceeds among the owners of the notes pro rata without preference or priority to the owners of any of the notes, yet then appellee would be on an equal footing with the owners of the other notes without any priority or preference. Appellant further contends this is not within the letter or spirit of the statute of 1909, but that under that statute unless appellee invested the fund in ''school, municipal, county or State bonds'' he could only invest them under a mortgage on real estate which gave him a first lien prior to all other creditors of the mortgagor.

On the other hand, appellee contends that the statute only requires the investment of the funds under a first mortgage on real estate, and that investment in notes secured by a first mortgage on real estate is in compliance with the statute, even though other creditors had an equal lien on the real estate under the same mortgage. It is the well-established doctrine of this State that where a mortgage or trust deed has been given to secure the payment of several notes becoming due at different dates, the owners of the notes, in the absence of any special provisions to the contrary, have a priority of lien in the order in which the notes become due and payable, and that the owner of the note or notes first maturing has the right to foreclose and sell the property to satisfy his debt, and that the holders of the other notes can redeem in succession according to their priority as they become due. (*Vansant v. Allmon,* 23 Ill. 31; *Gardner v. Diederichs,* 41 Ill. 158; *Walker v. Dement,* 42 Ill. 272; *Kœster v. Burke,* 81 Ill. 438; *Schultz v. Plankinton Bank,* 141 Ill. 116.) It is also well settled that such a mortgage or trust deed may legally stipulate that the owners of other notes than those first falling due may have a priority of lien or that all the notes are on equal footing without any priority to the owners of any of them. (*Walker v. Dement, supra.*) It is plain that the object of the legislature in passing the law of 1909 was to insure the absolute safety of the investment of the Kaskaskia Commons Permanent School Fund so far as possible. The law provides that the funds must be invested in certain specified bonds or on "good first mortgages on real estate." It is commonly recognized that a mortgage securing a debt is a mere incident to the debt. This principle of law is so well recognized by the courts of this State that it requires no citation. This being true, it seems to us it must follow as a necessary sequence that what the legislature intended was that the investment made of these funds should be a

first debt in priority of lien under the mortgage and not simply that the investment made should be one of a number of the debts of the mortgagor secured by the said first mortgage on real estate and of equal priority. It appears from the pleadings of appellee that at least $350,000 in notes were issued under the trust deed in question, and it is alleged in the pleadings of appellant that $500,000 in such notes were issued. From which it clearly appears that there were at least $330,000 worth of other notes on an equal footing, so far as priority of claim is concerned, with the notes bought by appellee. If, under the statute, the purchase of these notes standing on an equal footing with $330,000 worth of other notes was a compliance with the law, it would follow that it would also be a compliance therewith if the whole number of bonds authorized by the instrument creating the trust were issued. The legislature certainly had a purpose in using the word "good" in describing the mortgages under which such investments could be made. In our opinion the statute in question only permits the investment of these funds in notes secured by a mortgage on real estate which gives those notes, and those notes only, a first lien on that real estate, and the investment of the same in notes secured by a first mortgage which gives to other notes an equal lien is not an investment under a "good first mortgage" as contemplated by the act of 1909. We must therefore hold that the investment of these funds by appellee was not in compliance with the statute. The contention of appellant that an investment secured by a deed of trust is not an investment in a "good first mortgage" under this statute, we regard, as applied to this case, as a distinction more technical than real, and we will treat the matter as though a trust deed and mortgage were the same. (3 Jones on Mortgages, 7th Ed., 443; *Union Mut. Life Ins. Co. v. White*, 106 Ill. 67.)

It was contended by appellee and alleged in his eighth plea that the acceptance of these investments

and the interest thereon, without objection and with full knowledge of their character by his successors in office and after the expiration of his term of office, releases appellee from any loss thereafter resulting. The question whether appellee's successor in office would be liable on his bond for accepting from appellee these investments, which we hold to be illegal, is not before us. It would be a dangerous doctrine indeed to hold that an officer intrusted with an investment of public funds is relieved from all liability for losses resulting from an illegal investment of those funds, by his successor in office accepting such investments from him. Especially would this be a dangerous doctrine where the statute authorizing the investment is clear and precise and its meaning evident. In *Whittemore v. People,* 227 Ill. 453, the Supreme Court of this State held that the State treasurer was not protected from liability in retaining certain fees collected by him, by the fact that his predecessors for a period of 40 years prior thereto had placed the same construction upon the statute covering this matter. In that case the Supreme Court said: "The aid of contemporaneous construction can only be invoked where the language of the statute is ambiguous or doubtful. It can have no application where the language of the act and the intent of the legislature are plain." If this is the law, where such construction sought to be invoked was followed for a period of years prior to the act complained of, certainly no action, construction of law or approval of appellee's acts by his successor can be any protection to him where such acts, construction or approval occurs after the investment was made.

The next general question for consideration is whether appellee is exonerated by the fact as stated in his ninth and fourteenth pleas, that before making the investment he and the auditor of public accounts interviewed the Attorney General and the Attorney General advised them such proposed investment was

in compliance with the statute. If the language of the statute were ambiguous and its meaning doubtful there would be more merit in this contention. It seems to us, however, that the language of the statute is clear and precise, with its meaning evident, and there does not seem to be any room for construction. Our attention has not been called to any decision of this State and we are aware of none holding that the advice of the ·Attorney General, under such circumstances, is any protection to an officer following it if such act of the officer is contrary to law. It is alleged by appellee in plea No. 10 that appellee's successor in office and the succeeding auditors of public accounts accepted and retained the bonds in question, and that up to February 1, 1916, the bonds could have been disposed of in the open market at par. If this investment was illegal under the statute, as we have held it to be, the failure of appellee's successor to realize on these investments could not be any bar to an action by the people against appellee on his bond. In an action against the surety on the bond of a State employee, the Supreme Court held that the mere failure of any State officer or officers to take necessary steps to prevent further loss or further default on the part of the employee would not relieve the surety from its obligation on the bond. (*People v. Hart,* 280 Ill. 345.) We think that principle applies here and that it was error for the trial court to overrule appellant's demurrer to this plea.

Appellee insists that he is entitled to a judgment in this case on the 5th, 6th, 7th and 8th pleas. These pleas are, in substance, a statement in greater detail as to how the particular investment was made and the terms and conditions thereof than is found in the declaration. The court overruled appellant's general and special demurrer to each of these pleas and instead of abiding the demurrer appellant filed a replication

to each of them. Appellee's contention is that appellant, by filing replications, admits that each of these pleas stated a complete defense to the declaration unless the new matter set up in the replication was sufficient to avoid such complete defense so admitted to be set out in the pleas, and that therefore the only question arising on the court's action in sustaining demurrers to these replications is whether or not the new matter contained in the replications is sufficient to avoid the complete defense admitted to be set out in such pleas. This is undoubtedly a correct statement of the law where replications are in confession and avoidance of the pleas. Replications may either traverse or deny the truth of the matter alleged in the plea, or may confess and avoid the plea. Each of these pleas conclude with a verification. It was necessary then for the appellant to file a replication thereto. These replications when carefully examined, we find, do not set up any new matter by way of confession and avoidance, but deny the allegations of the pleas and reallege the matters set forth in the declaration. Each of these replications concludes to the country, and in our opinion must be considered as traversing and denying the pleas and not confessing and avoiding the same. Therefore the rule above contended for by appellee does not apply. (Chitty on Pleadings, 14th Amer. Ed., vol. 1, page 578.)

There remains only to be disposed of appellee's assignments of cross error on the court's action in sustaining demurrers to pleas 1, 3, 4, 11, 12 and 13. Appellee has presented no argument and cited no authorities to sustain his contention that the court erred in sustaining demurrers to pleas 1 and 3. That assignment of cross error will therefore, under well-established rules of this court, be considered as waived. Plea No. 4 was a plea of *non damnificatus*. It is evident from the pleadings that the bond declared upon provides for a penalty and not for liquidated damages,

and therefore appellant, if entitled to recover, could only recover such damages as the proof showed had been sustained. That being true, if the proof showed that no damages had been sustained then there could be no recovery. (*Westfall v. Albert,* 212 Ill. 68; *Heisen v. Westfall,* 86 Ill. App. 576.) This was a proper plea and a demurrer thereto should have been overruled. By plea 11, appellee alleges that all the damages sought to be recovered in the declaration over and above the sum of $7,000 could have been saved and avoided if the then acting State treasurer and auditor of public accounts had deposited the bonds with the trustee and a committee of the bondholders in the foreclosure suit as requested to do by appellee. Plea No. 12 alleges that all the damages claimed in the declaration over and above $15,000 could have been saved and avoided by the plaintiff and the then acting State treasurer and auditor of public accounts by accepting from the referee in bankruptcy of the United Flour Mills Company their pro rata part of the money received by said referee in the sale of the property covered by the mortgage. Plea No. 13 alleges that the bonds purchased by appellee were considered by the general commercial and business usage in the State of Illinois and elsewhere and under a common custom in business and financial transactions to be first mortgage securities on real estate. Demurrers were sustained to each of the 11th, 12th and 13th pleas. In the view we have taken of the law generally applicable to this case, neither of these pleas presented a defense to the breach of the bond alleged in the declaration and all were obnoxious to demurrer.

In accordance with our view of the law applicable to this case, we hold that the court did not err in sustaining demurrers to pleas 11, 12 and 13 but did err in overruling demurrers to pleas 9, 10 and 14, and also erred in sustaining demurrers to plea No. 4 and to the replications to pleas 5, 6, 7 and 8. We there-

22    APPELLATE COURTS OF ILLINOIS.

Bank of Com. & Sav. v. Pope County State Bk., 223 Ill. App. 22.

fore conclude that the judgment should be and it accordingly is hereby reversed and the cause remanded.

*Reversed and remanded.*