312

In re Estate of Ella P. Sargent, Deceased.

Gen. No. 8,606.

Opinion filed August 1, 1934.

BARNES & MAGOON, for appellants.

HAMILTON, BLACK, HOLTGREVE & KLATT, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On November 25, 1918, the appellee, Frank E. Wilson, was appointed conservator of the estate of one Ella P. Sargent who died July 17, 1928. By reason of his appointment as such conservator Wilson became *ex officio* administrator of the Sargent estate. The appellee qualified as administrator of said estate and filed his final report in the county court of Marshall county in March, 1931. The heirs of Ella P. Sargent, deceased, filed numerous objections to the report. The report and objections came on for a hearing in said court and the county court sustained the objections to one item of $4,000, commonly referred to as the "Thompson notes." An appeal was taken to the circuit court of said county, and upon a hearing before this court the objections were again sustained as to the $4,000 Thompson note. The objections were also sustained as to the administrator's fee of $800, and attorney's fee of $400. Otherwise the objections to said report were overruled. Both the administrator and the heirs prayed an appeal to this court. The heirs of Ella P. Sargent, deceased, are the only ones that have perfected the appeal, but the administrator has assigned as cross errors that the court erred in sustaining objections to the administrator's fee of $800 and to the attorney's fee of $400.

It is admitted by the parties to the litigation that the court properly sustained the objection to the $4,000 item, commonly referred to as the "Thompson notes." The appellant seriously insists that the court erred in not sustaining their objections as to the $1,500 Wilkinson note, and the Anderson $2,000 note. Appellants also contend that the court erred in allowing the conservator any fees for himself or his attorney for handling the estate, because they claim the records show gross mismanagement of the estate by the con-

servator, Frank E. Wilson. The conservator, Frank E. Wilson, purchased the Wilkinson note of $1,500 on March 1, 1922, the same being due five years after that date. He purchased this note from the Thompson Farm Loan Company, and at the time he purchased such notes he was manager of the said Thompson Farm Loan Company. This note was a part of a series of notes for the sum of $12,000 secured by a mortgage on a farm in the State of Iowa. The Anderson note was dated March 1, 1924, and due March 1, 1934 in the principal sum of $2,000. This note was a part of an $18,000 mortgage loan on 160 acres of land situated in Wright county, Iowa, and was also purchased from the Thompson Farm Loan Company.

Cahill's St. ch. 86, ¶ 18 (section 18, chapter 86, Smith-Hurd Revised Statutes) describes the duties of a conservator in taking care of his ward's estate and is as follows: "It shall be the duty of the conservator to place and keep his ward's money at interest, upon security to be approved by the court, by investing, on approval of the court, the same in United States bonds or in the bonds of any state, county, city or municipality, which are not issued in aid of railroads and where the laws do not permit said counties, cities or municipalities to become indebted in excess of five per cent of the assessed valuation of property for taxation therein, and where the total indebtedness of such county, city or municipality does not exceed five per cent of the assessed valuation of property for taxation at the time of such investment. Personal security may be taken for loans not exceeding $100. Loans upon real estate shall be secured by first mortgage, or trust deed thereon and not to exceed one-half the value thereof. All loans shall be subject to the approval of the court. The conservator shall be chargeable with interest upon any money which he shall wrongfully or negligently allow to remain in his hands uninvested, after the same might have been invested."

From the reading of this section of the statute it is clear that if the conservator invests his ward's funds in real estate loans they must be secured by first mortgages. Our courts have held that the provision of this statute is mandatory and the statute in question only permits the investment of such funds in notes secured by a mortgage on real estate which give these notes and these notes only a first lien on the real estate. An investment of the same in notes secured by a mortgage which gives other notes an equal lien is not an investment in a good first mortgage as contemplated by our statute. *People v. Mitchell,* 223 Ill. App. 8.

The conservator had no right to invest the funds of his ward in these notes as they were not secured by a first mortgage on real estate. There is a more serious objection to the legality of the purchase of these notes by the conservator. The record in this case shows that the conservator was also an officer of the Thompson Loan Company; that he, as conservator, bought the loans from the company in which he was the manager. This is contrary to public policy. In the case of *Miles v. Wheeler,* 43 Ill. 123, the court in discussing the same question used this language: "There is really no room for controversy as to the main question. It is perfectly manifest, from the facts stated above, that the name Alexander was used merely as a means of passing the title of the land to Miles; that the sale to Alexander was simply colorable; and that the transaction was really a purchase by an administrator at his own sale. This the law forbids. *Thorp v. McCullom et al.,* 1 Gilm. 614; *Dennis v. McCagg,* 32 Ill. 444; *Michaud v. Girard,* 4 How. 553. In this last case the Supreme Court of the United States gave this question a very searching examination, reviewing the authorities both in the common and civil law. In that case an executor, as in this an administrator, became the purchaser, through the interposition of a third person, of real estate belonging to the deceased, and sold at public

sale. The court laid down the salutary rule that this is fraudulent *per se,* and that it matters not that the sale was at a public auction, for a fair price, and made through the medium of a third person as the bidder, and to whom the executor or administrator conveys. It avails nothing to show that the intentions of the trustee were honest, and that here was no fraud in fact. It is one of those cases in which the law will not permit a trustee to palter with his own conscience. It shields him from all temptation by the inflexible rule that he cannot buy. The plain and sufficient reason is that the interests of the buyer and seller of the same property are necessarily antagonistic, and the only safe rule is one which absolutely forbids a trustee to occupy two positions inconsistent with each other.'' The same doctrine was announced by this court in the case of *Field, Leiter & Co. v. Colton,* 7 Ill. App. 379; *St. Paul Trust Co. v. Strong,* 85 Minn. 1, 88 N. W. 256; *McGruder v. Drury,* 235 U. S. 106; *In re Riordan,* 216 Iowa 1138, 248 N. W. 21; *In re Security Bank & Trust Co.* (Minn.), 224 N. W. 235.

It is our opinion that the conservator in purchasing these notes imposed a fraud upon the estate of Ella P. Sargent, and the trial court erred in not sustaining the objections to this part of the report. The conservator should be compelled to pay to the estate of Ella P. Sargent, deceased, the amount of the Anderson note of $2,000 and the Wilkinson note of $1,500, with interest from the date of their purchase, but he should be given credit for any interest that he has collected on said loans and paid to the estate of Ella P. Sargent.

The appellants contend that the court erred in allowing the conservator any fees or any attorney fees, because the record shows gross mismanagement of the estate from the time the conservator was appointed down to and including the time of his final report as administrator. The record shows that during the time

that Mr. Wilson was acting as conservator he was allowed $797 fees for himself and $140 attorney's fees; that the estate at the time he was appointed conservator consisted of approximately $8,500 net assets; that under his management the estate increased in value. The record also shows that Mr. Wilson made numerous investments of his ward's funds that were not authorized by law, but we are not prepared to say that the county court and the circuit court erred in allowing his fees and attorney's fees for managing the estate of Ella P. Sargent, deceased, while he was such conservator.

The record discloses that Frank P. Wilson after he was appointed administrator of the estate of Ella P. Sargent, deceased, deposited in the Thompson Farm Loan Company the sum of $3,466.63. We know of no rule of law that would permit, or justify, such a transaction, and in our opinion it should not have been done. Mr. Wilson, being an interested party of the Thompson Farm Loan Company, benefited by having deposited this money in said company, and should be held liable to pay to said estate the amount of the deposit, together with the legal rate of interest on the same from the date the deposit was made.

The record shows that after Mr. Wilson was appointed administrator he did things which he should not have done and did not do things that he should have done. The trial court sustained objections to the allowance of $800 fees to such administrator and a $400 fee for his attorney's fee. In this we think the court was justified. The order of the circuit court is hereby reversed and the case remanded to said court with directions to enter an order in compliance with the facts as set forth in this opinion. On account of the mismanagement of said estate the costs of this appeal are hereby charged against Frank E. Wilson individually.

*Reversed and remanded with directions.*