In re Estate of Joseph Lalla, Incompetent et al., Minors.

Gen. Nos. 38,215–38,217.

Opinion filed July 5, 1935.

H. R. Pool, for appellants.

Scott, MacLeish & Falk, Robertson, Crowe & Spence, John P. Conmy and Frank J. Komarek, all of Chicago, for appellees.

Mr. Justice Matchett delivered the opinion of the court.

These consolidated appeals, three in number, concern the estates of one conservator and two guardians. In each matter the principal question for determination involves the right of guardians and conservators to invest and the power of the probate court in such

cases to authorize the investment of funds of such estates in "split mortgage securities." In each matter the questions were raised by objections of a guardian *ad litem* to the final report in the probate court. From the orders entered in that court appeals were taken to the circuit court, where each matter was heard *de novo,* being submitted as an agreed case pursuant to section 85 of the Civil Practice Act, and in compliance with Rule 48 of the Supreme Court. The determination of the question depends upon the interpretation of two statutes—in guardianship matters, section 22, chapter 64 (Cahill's Ill. Rev. Stats. 1933, ¶ 22, p. 1519), and in the conservator matter, section 18, chapter 86 (Cahill's Ill. Rev. Stats. 1933, ¶ 18, p. 1790.)

In all these estates the funds invested were derived from the United States Veterans Bureau and its successor in office, the United States Veterans Administration, and it is stipulated in each case that Frank T. Hines is administrator of such funds, is an interested party and is entitled to be heard. The amounts involved are comparatively small and the guardians and conservator served without compensation, but the decision in these matters will affect large numbers of similar estates in course of administration and investments amounting to millions of dollars. An opinion from the Supreme Court to the end that there may be a conclusive determination of the question is desired.

The parties are agreed that there is no material difference in the provisions of section 22 of chapter 64 and section 18 of chapter 86. Section 22 concerns the duties of guardians; section 18, the duties of conservators; but their duties are substantially similar, the substance of the statutes is in *pari materia,* they are identical in design and purpose and place restrictions upon the rights of guardians and conservators, in addition to those which existed at common law. Neither statute, however, assumes to provide a complete code with respect to the duties and obligations of

these trustees in the administration of the estates of their wards.

Section 22 of chapter 64 declares as follows with reference to investments by guardians:

"Loans upon real estate shall be secured by first mortgage thereon and not to exceed one-half the value thereof. No mortgage loan shall be made for a longer time than five years nor beyond the minority of the ward: *Provided,* the same may be extended from year to year without the approval of the court."

Section 18 of chapter 86 declares as to conservators:

"Loans upon real estate shall be secured by first mortgage, or trust deed thereon and not to exceed one-half the value thereof. All loans shall be subject to the approval of the court." Both statutes seem to require the approval of the court with reference to such investments.

The securities to which objections were made in these estates were either purchased with the approval of the court, or approved by the court after the purchase was made. The objectors, however, contend that the probate court by reason of these and other statutory restrictions was wholly without power or jurisdiction to make orders approving the purchase of "split mortgage securities," meaning thereby a series of notes or bonds ownership of which is in different parties, but all secured by the same trust deed or mortgage.

The probate court of Cook county is a court of limited jurisdiction. It can exercise only such powers as are expressly granted or are by implication necessary to carry out powers lawfully and expressly granted. *People v. Seelye,* 146 Ill. 189; *Chapman v. American Surety Co.,* 261 Ill. 594. Upon appeal from the probate court, the circuit court of Cook county cannot exercise any power save that which the probate court could or should have exercised while the particular matter was pending therein. *Miller v. Miller,* 82 Ill. 463; *Palmer*

*v. Riddle,* 180 Ill. 461; *People v. Siman,* 284 Ill. 28; *Armstrong v. Obucino,* 300 Ill. 140.

The above propositions, we understand, are not denied by the parties to this controversy. Neither is there a denial by them of the further proposition (which is established by a long line of cases) that the requirements of these statutes concerning the investment of funds of conservators and guardians are mandatory in their nature. *Bond v. Lockwood,* 33 Ill. 212; *McIntyre v. People,* 103 Ill. 142; *Hughes v. People,* 111 Ill. 457; *Winslow v. People,* 117 Ill. 152; *Hayes v. Massachusetts Mut. Life Ins. Co.,* 125 Ill. 626; *Chapman v. American Surety Co.,* 261 Ill. 594.

The investments in controversy are as follows:

The conservator in the Lalla estate purchased at par the note of William and Leah Fine for the sum of $1,000. It was one of 17 notes secured by a trust deed which was a first lien on all the property. The other notes were owned by other parties. The conservator also purchased at par a so-called mortgage bond for the sum of $500 issued by the Hawthorne Roofing & Tile Co. It was one of a series of 45 bonds aggregating $35,000 and secured by a first lien trust deed conveying real estate. The other bonds were owned by other parties.

In the Waterbury estate the guardian purchased at par two first mortgage gold bonds of the Enterprise Parlor Furniture Co. for the sum of $500 each. These bonds, with others, in the aggregate amount of $30,000 were secured by a trust deed of the same date, which was a first lien on the property conveyed, and the other bonds were owned by other parties.

In the Kellogg estate the guardian purchased at par for LaVerne Lucille Kellogg a first mortgage gold bond for the sum of $1,000 executed by Erick and Esther Linn. This note, with others aggregating the total sum of $10,000 and maturing on divers dates,

was secured by a first trust deed of even date conveying real estate. Another of the same issue of notes in the sum of $1,000 was purchased at par by the guardian for the estate of Shirley Adellia Kellogg. Both these notes are in default. The guardian also purchased at par for the estate of Shirley Adellia Kellogg a first mortgage note of James P. and Mary E. McGee for $250. This note, with others made by the same parties in the aggregate amount of $35,000, was secured by a first lien trust deed, and default has been made in the payment of the note.

The guardian also purchased at par for the estate of Shirley Adellia Kellogg the note of Nils and Olga Anderson for the sum of $500. This note by extension became due April 7, 1932. It was secured by a first lien trust deed executed by the makers. The total indebtedness of $16,000 secured was represented by 16 principal promissory notes numbered 1-A to 16-P. The note 11-K, together with another note which would mature upon the same date, was the first of the unpaid notes to mature. These notes are not in default. This guardian also purchased for the estate of LaVerne Lucille Kellogg at par the note of Patricia Schmitz for the sum of $750. It was secured by a first lien trust deed executed by the maker to secure an indebtedness aggregating $21,000, represented by 31 principal promissory notes for divers amounts and maturing on divers dates. This note is in default.

The trust deeds in these purchases made in the Kellogg estate are distinguished from the trust deeds securing the notes purchased in the estates of Lalla and Waterbury in a vital respect, in that each of those trust deeds contained a "parity clause," so-called. The parity clause in the trust deed securing the Fine notes reads as follows:

"All of said notes herein described are equal in all things secured by this Trust Deed without any preference or priority whatsoever of the lien thereof in favor

of any one or more of said notes, over one or more of the others."

There were substantially similar provisions in the Hawthorne Roofing & Tile Co. and the Enterprise Parlor Furniture Co. trust deeds. There are no such provisions in the Linn, McGee, Anderson or Schmitz trust deeds. The absence of any such parity clause seriously affects the lien value of these split mortgages, since in such case the liens attach and are entitled to priority in the order of the maturity of the same. *Schultz v. Plankinton Bank,* 141 Ill. 116; *Kuppenheimer v. Chicago Title & Trust Co.,* 163 Ill. App. 127. Where, however, there are several notes or bonds secured by the same trust deed, and these notes or bonds mature at the same time, each holder of a note or bond has an equal equivalent or concurrent lien on the mortgaged property with all the other holders of notes or bonds, and in the event of foreclosure and sale, are to be paid pro rata out of the proceeds of the sale. The result is the same as if so many separate mortgages of equal and concurrent rank and dignity were simultaneously executed. No single note or bond holder acquires a first mortgage lien prior to the mortgage lien of the other holders. *Walker v. Dement,* 42 Ill. 272; *Humphreys v. Morton,* 100 Ill. 592; *People v. Mitchell,* 223 Ill. App. 8; *In re Estate of Sargent,* 276 Ill. App. 312.

The circuit court approved of the purchase of the Anderson note and disapproved of the purchase by the guardian of all other notes purchased for the Kellogg estate and charged the amount of the purchase to the guardian. It approved the purchases made by the conservator in the Lalla estate and by the guardian in the Waterbury estate. It was held that those securities which did not have an equal and equivalent lien value with all other notes of the issue because the notes matured at different times and where there was no clause in the trust deed providing parity of lien or

excluding priority and preference according to the order of maturity in the event of foreclosure, did not conform to the requirements of the statute. Those notes or bonds which had equal and equivalent value with all other notes of the issue either by reason of the fact that all of the notes matured on the same day, or by reason of the fact that the trust deed included a clause providing parity of lien and ratable security for all the notes of the issue, were held to be securities which conformed to the requirements of the statutes.

The objectors say:

"It is the contention of the objectors that both the guardianship and conservatorship statutes contemplate first lien security and that no lien is a first lien if it is subordinate to other liens or if it is equal to and equivalent with other similar liens." The objectors contend that any holding inconsistent with this last proposition is contrary to the plain and unambiguous language of the statutes in question.

It is trite to say that the object of the construction of a statute is to ascertain the intention of the legislature, and that to this end we first look to the language of the statute itself. Here as to language the one statute is distinguished from the other only by the term "trust deed," which is not a material difference. In *People v. Mitchell,* 223 Ill. App. 8, we held that the distinction between a trust deed and a mortgage was "more technical than real." In *Ware v. Schintz,* 190 Ill. 189, the Supreme Court held that a deed of trust given to secure a debt was in legal effect a mortgage, and the legislature has declared, "A trust deed in the nature of a mortgage shall be deemed to be a mortgage, and be subject to the same rules as a mortgage." (Cahill's Ill. Rev. Stats. 1933, ch. 30, ¶ 109, sec. 61.)

In Bouvier's Law Dictionary, vol. 2, p. 2248, a mortgage is defined to be:

"A conveyance of real estate or assignment of personal property, without parting with the possession in

either case, by way of hypothecation as security for the performance of some act, usually the payment of money, and treated at law as a conveyance or assignment, but in equity as a lien." Webster's New International Dictionary defines the word "first" as meaning "preceding all others; first in time or a series, position, or rank; earliest in time or succession; foremost in position; in front of, or in advance of, all others; foremost in rank, importance, or worth." Indeed, judicial elaboration adds little to the popular and customary understanding that "first" means neither second nor subordinate to any other of the same kind.

In determining whether split mortgage securities may be construed as first mortgages within the meaning of these statutes, it is well to bear in mind that neither conservators nor guardians in the first instance derive the right and power from these statutes to invest their wards' money in any loan upon real estate. They had the power to make such loans at common law and independently of these statutes. These statutes do not create a power in conservators and guardians. On the contrary, the statutes operate by way of limitations and restrictions upon powers which already existed. Moreover, the legislature has directed the method and the spirit in which statutes, such as these, must be construed, stating that "expressions shall be liberally construed in order that the true intent and meaning of the Legislature may be fully carried out." Cahill's Ill. Rev. Stats. 1933, ch. 131, ¶ 1.

These statutes command that the obligation thus purchased by guardians or conservators must be secured by a first mortgage or trust deed; that is, an instrument which creates a lien that is first, not second or subordinate, to any other made by the owner or his predecessor in title. A first lien within the meaning which the objectors would give to it can scarcely be said to exist anywhere. Taxes, court costs of foreclosure, sheriff's fees, master's charges and commis-

sions, costs of advertising, and similar items take precedence. The trustees' fee also is a prior charge which must be paid before distribution to the noteholder of the proceeds of the foreclosure sale. It is apparent, we think, that the legislature used the term "first mortgage" in the usually accepted meaning of the words, rather than in a narrow literal or technical sense.

The objectors cite some of the earlier Illinois cases which seem to hold that a mortgage vests the legal title in the mortgagee. *Hall v. Byrne & Co.,* 1 Scam. (Ill.) 140. That was the common law rule, but that is not the present rule in this State. Jones on Mortgages, 8th ed., vol. 2, pp. 361, 362; Reeve on Illinois Law of Mortgages and Foreclosures, vol. 1, pp. 3–10, and cases there cited. The authorities cited from other jurisdictions where the legal as opposed to the equitable theory of mortgages obtained are not in point, nor are cases like *National Surety Co. v. Manhattan Mortgage Co.,* 174 N. Y. S. 9, and *Hoyt v. Dollar Savings Bank,* 175 N. Y. S. 377, where by special agreement of the parties in interest one part of the loan was subordinated to another, applicable.

The essence of a mortgage consists in the kind and quality of lien upon the land which is created thereby. If as to priority it is first (that is, not second or subordinate to any other) then within the plain meaning of the words of these statutes it is a first mortgage. Nor does the fact that the mortgage secures several notes or bonds owned by different persons affect the nature and quality of the lien or impair it in any way, where the instrument contains clauses providing for complete parity between the several notes and bonds or obligations secured. As was said in *Freutel v. Schmitz,* 299 Ill. 320, the lien is measured by the amount of the debt. It is not measured or appraised by the form of the debt, or the ownership of it. These

may (and often do) affect the desirability of the security; so do many other considerations, such as, for instance, the personal credit of the makers of the notes or bonds which are secured, or, most important of all, the market value of the land conveyed. The legislature in its discretion might have imposed in this connection limitations or restrictions, but it did not do so. It might have provided (and wisely) for limitations with reference to the remedies available in case of default. It did not do so. These matters, with many others, seem to have been left to the discretion of the conservators and guardians, subject only to the provision that their judgment should be approved by the county or probate court.

We hold that the court properly approved the purchase of these securities in which the trust deeds contained provisions for parity of the notes and bonds secured and equality of lien under the provisions of the respective trust deeds. For the same reasons we hold that the purchase of the Anderson note in the Kellogg estate was properly approved. While there was no parity clause in the trust deed, the date of the maturity of both obligations secured thereby was such as to preserve the parity and equality of lien.

We do not undertake to say that guardians and conservators ought as a matter of wise policy to purchase these split securities, or even that judges of county and probate courts should in the exercise of their discretion under the statute approve of such investments. The last few years have taught much about the values of investment securities. Conservators, guardians and courts are not precluded from acting upon the wisdom which they may have acquired by reason of such experience.

The objectors argue that the precise question has been settled adversely to the contention of the conservator and guardians. The first case relied on is

*People v. Mitchell,* 223 Ill. App. 8. That was an action in debt brought upon the bond of the treasurer of the State of Illinois. By an act of the General Assembly, approved June 16, 1909, it was in substance provided that a fund known as Kaskaskia Commons Permanent School Fund should be kept by the treasurer of the State and auditor and invested in certain named State and municipal securities, ''or good first mortgages on real estate, so as to bring at least 5 per cent interest; said investments to be made by the State Treasurer by and with the approval of the State Auditor, who shall be keeper of said securities and the Auditor shall keep an accurate and correct record thereof.'' It was assigned for breach of the bond that the treasurer had invested $20,000 of said fund in the purchase of 30 certain bonds of the United Flour Mills Co., an industrial corporation of Minnesota, operating in that State and in South Dakota; that these 30 bonds were a part of a series of bonds, 600 in number, of the aggregate face value of $500,000, drawing interest at the rate of 6 per cent per annum and maturing in annual series commencing February 1, 1916, and extending to February 1, 1930; that these bonds were secured by a trust deed to a Chicago bank as trustee which provided that the security should be for the equal pro rata benefit of the holders of the bonds; that bonds were issued to the amount of $500,000 and sold to different persons, but the bonds purchased had defaulted and demand had been made on the treasurer to restore the $20,000, which he refused to do. The sufficiency of this assignment was questioned by demurrer and sustained by the trial court. The Appellate Court said that the legislature certainly had a purpose in using the word ''good'' in describing the mortgages under which the investments were to be made, and then went on to say that in its opinion the statute permitted such investment only in notes secured by a mortgage which

gave to those notes, and those notes only, a first lien on the real estate. The security described in the declaration was objectionable from many other standpoints. The statement as to the exclusive character of the lien was merely obiter. Moreover, the statute there did not (as the statutes we are here considering do) provide for judicial control of the investments. Also (unlike these) that statute assumed to provide a complete code for the investment of the funds. The case is therefore clearly distinguishable and, we think, not controlling here. It was, however, cited in *In re Estate of Sargent,* 276 Ill. App. 312, where it was held that a conservator, who purchased securities from a company of which he was manager, occupied an inconsistent position, and that he would be held liable on grounds of public policy,—a rule which has been declared in many cases and is well settled. The securities there purchased were a part of a series of notes, and the court, citing the *Mitchell* case, said that a mortgage which gave other notes an equal lien was not an investment in a "good" first mortgage. The statement was, of course, wholly unnecessary to a decision of the case.

The objectors also cite *In re Guardianship of Lutz,* 280 Ill. App. 587. In that case, also, it appears the court relied on the *Mitchell* case as applicable and controlling. We hold it is not, for the reasons stated. In that case too the Appellate Court held that the investment had not been approved by the court. We hold this to be an important and controlling fact. *Bruner v. Wolford,* 356 Ill. 514. Moreover, the proceeding was not against the guardian, but against the vendor.

The sureties on the bond of the guardian in the *Kellogg* case have filed a cross appeal from that part of the order which charged against them the amount of the funds of the several wards used in the purchase of securities other than the Anderson note. In view of the decisions we have already pointed out as to the

construction of trust deeds containing no parity clauses where the notes or bonds secured matured upon different dates, the holding of the circuit court as to these securities could not, in our opinion, have been other than what it was. The guardian in the purchase of the McGee note obtained the equivalent of a thirty-seventh mortgage, in the purchase of the Schmitz mortgage a fourth mortgage, in the purchase of the Linn mortgage third and fourth mortgages. Even if the statutes in question limiting and restricting the powers of conservators, guardians and the court had not been enacted, we would agree with the objectors that these securities would not have met the requirements at common law.

In reaching the conclusion that the orders in question should be affirmed, we have not found it necessary to consider the historical development of these statutes in this State nor the contemporaneous construction of the same extending over years, the convenience and necessities of such investments arising out of the evolution of trade and commerce, nor the evidence of experts, all of which are relied on by the conservator and guardians. We prefer to rest our decision upon the plain and (we think) necessary interpretation of the language of the statutes and the fact that the securities were purchased upon approval by the probate court.

For the reasons indicated, in each estate the order of the circuit court will be affirmed.

*Order affirmed.*

McSURELY, P. J., and O'CONNOR, J., concur.